WILLIAM M. TALLMAN, Appellant

*vs.*

GEORGE B. ELY, Respondent.

APPEAL FROM ROCK CIRCUIT COURT.

The grantee of the mortgagor cannot maintain an action of ejectment against the assignee of the mortgagee, who is lawfully in possession of the mortgaged premiseses, after condition broken.

The necessary consequence of a decree of foreclosure and sale of mortgaged premises, is to merge the interests of the parties to the suit in the decree, and to transfer and vest them in the purchaser at the sale.

Where a decree of a court of record assumes to settle the rights of the parties to a suit, the subject matter whereof is confessedly within the jurisdiction of the court, the presumptions of law are in favor of the record, and that the court had also jurisdiction of the parties.

Where there is a vagueness in a record upon the question of the appearance of a party defendant, parol proof of the appearance, as a fact, is competent: such evidence does not tend to vary or contradict the record, but to support it.

This was an action of ejectment, brought by respondent, Ely, against the appellant, for the possession of a tract of land in Rock county, and it was tried by a jury, at Janesville, before J. M. Keep, circuit judge, at the June Term, 1856. The appellant and respondent both derived title from one James G. Alden, who, while owning the premises, executed a mortgage deed of the same to one Charles G. Fitch, to secure the payment of money loaned, and which had never been repaid, although the same had been long due. After the execution of the mortgage to Fitch, Alden conveyed the legal interest in the premises to Ebenezer Alden, who conveyed to Eliza M. Hall, who conveyed to John F. Rague, who conveyed to the plaintiff in ejectment.

The defendant in ejectment claimed under the aforesaid mortgage, executed by James G. Alden to Charles G. Fitch: and his claim to retain the possession was of a two-fold char-

acter. Firstly. That while the legal title was in Rague, and before his conveyance to the plaintiff, the said mortgage was foreclosed in equity, at the suit of said mortgagee, Fitch, against said James G. Alden, Eliza M. Hall, John F. Rague, and others, upon which proceedings a decree of foreclosure was had, and a sale of the premises, made in pursuance thereof to the said defendant in ejectment, Tallman, which sale was confirmed by the court and a deed ordered, and afterward executed to the said Tallman, under which he claims. Secondly. He claimed, as assignee of the mortgagee, Fitch, and offered in evidence an assignment duly executed and acknowledged by said Fitch, in and by which the said Fitch assigned and transferred to said Tallman the decree entered in the foreclosure suit, " and the note and mortgage of said James G. Alden on which the said decree is founded," &c.

To the record and proceedings in the foreclosure suit, it was objected by the plaintiff, that John F. Rague was not made a party—was not served with process, and did not appear—and that he, and the plaintiff, claiming under him, are not prejudiced thereby, or their interest foreclosed. To the subpœna in chancery, issued in said foreclosure suit, the sheriff of Rock county returned " served," as to Alden and wife, and " not found," as to Rague and the other parties defendants to the bill. The sheriff's return was filed July 12, 1851. On the 7th of April, 1852, the following rule was entered;

"An order having been made and granted in this cause on the seventh day of June A. D. 1851, by James Armstrong, Esq., county judge and ex-officio court commissioner for the county of Rock, requiring the defendants Ebenezer Alden, jr., Louisa M. Hall, John F. Rague, Albert C. Buffum, to appear and plead, answer or demur to the complainant's bill of complaint filed in this cause, on or before the eighth day of October A. D. 1851, or that in default thereof said bill be taken as confessed against them, and the matters and things therein decreed according to the prayer of said bill, and it was therein further ordered that a copy of said order be published in the Badger State, a public newspaper, printed in the county of Rock afore-

said, within twenty days from the date of said order, at least once in each week for six successive weeks, and said order having been duly published in said newspaper for six successive weeks within the time required therein, and no appearance, plea, answer, or demurrer to said bill having been made, filed, or served by, or on the part of either of said defendants in this cause, it is, on motion of Tallman and Parker, solicitors for the complainant, ordered that the said bill of complaint be and the same is hereby taken as confessed against the said defendants."

Dated March 13th, 1852.

And there was at the same time, (the 7th of April, 1852,) filed the following order, with the usual proof of publication:

[Title of the cause, &c.] "The subpoena issued in the above entitled cause, having been returned by the sheriff of Rock county not served as to each of the defendants Ebenezer Alden, jr, Louisa M. Hall, Albert C. Buffum, and Samuel Buffum, and it being made to appear in this court that the said defendants Ebenezer Alden, jr., Louisa M. Hall, John F. Rague, Albert C. Buffum, and Samuel Buffum, have not caused their appearance to be entered in said cause, and that neither of them reside in said county and cannot be found therein. Therefore, on motion of Parker and Tallman, complainant's solicitors, it is ordered that the said Ebenezer Alden, jr., Louisa M. Hall, John F. Rague, Albert C. Buffum, and Samuel Buffum and each of them appear and plead, answer or demur to the complainant's bill filed in this cause, on or before the eighth day of October, A. D. 1851, or that in default thereof said bill be taken as confessed against them, and the matters and things therein decreed according to the prayer of said bill, and it is further ordered that a copy of this order within twenty days hereof be published in the Badger State, a public newspaper published in the county of Rock aforesaid, at least once in each week for six successive weeks."

The decree of foreclosure was entered on the 2d day of October, 1852, and opens with the following recital: "This cause " came on to be heard upon the bill of complaint taken as con- " fessed against all the defendants in this cause, and was argued

" by counsel, and thereupon, upon consideration, it was ordered, " adjudged, and decreed as follows," &c.

The plaintiff objected to the reading of the record and proceedings of the foreclosure suit to the jury, for the reason that the same did not show that John F. Rague was served with a subpœna, and that the court never had jurisdiction over said Rague, and that therefore the proceedings were void as to him, and as to the plaintiff who claimed title under him; and the court sustained the objection, and refused to permit the record to be read to the jury; to which ruling the defendant excepted.

The defendant then called John Nichols as a witness, who being duly sworn testified that he was clerk of the court in March and April, 1852, and is now deputy clerk; he thereupon produced one of the calendars of causes for trial and hearing in the said court made by him for the March term of this court for the year 1852, and which among other entries contained the case of *Charles D. Fitch vs. James G. Alden et al.*, with the name of J. Neil marked in the margin as attorney opposite the defendants' name.

The counsel for the defendant then offered said calendar in evidence to the jury, and the counsel for the plaintiff objected, and the court sustained the objection and refused to permit the same to be read to the jury as evidence, to which the defendant excepted.

The counsel for the defendant then called Hiram Taylor as a witness, who being first duly sworn testified that he was an attorney and solicitor and counsellor of this court, and was retained by John F. Rague as his solicitor, to appear for him in the suit of Charles D. Fitch against him and James G. Alden and others for the foreclosure of the mortgage given by Alden to Fitch. The record of the suit hereinbefore set out was here shown to witness and identified by him as the one in which he was retained. " And the said Rague retained me to keep off the foreclosure suit and attend to the proceedings in the cause and get it off, and to collect the rents and profits of the land for him, and pay them on this mortgage. He was in Janesville after this foreclosure suit was commenced, and he and I

went to Mr. Tallman, Mr. Fitch's solicitor, and made an arrangement with him in this cause; this was while the suit was pending.

The arrangement was that the cause should go by default, if certain moneys were not paid by a certain time; Rague was to have further time. I and my partner, James Niel, appeared in court for Rague in that cause, and resisted proceedings in the cause, and in the spring term of 1852 we agreed in open court that complainant should have his decree in the fall term, if the monies were not paid before that time.

This consent was made in open court by Niel and myself as solicitors for Rague. I did not appear for any other defendant in that foreclosure suit but Rague.

Our retainer was a general retainer, and we appeared in the case as solicitors for Rague in the same way."

The counsel for the defendant then called James Niel as a witness, who testified in substance as follows: "I formed a partnership for the practice of law in Janesville, with Hiram Taylor in 1850. The first time I ever saw Rague was in the fall of 1850. He came in our office.

Taylor was his agent concerning this land to pay taxes, &c. Soon after I saw Rague again in our office; he was talking with Taylor, and this was the first time I heard of this foreclosure. This was in 1851; can't say whether in the spring or fall.

The first time it was brought to my knowledge was after the foreclosure was commenced. My attention was called to it then by Rague and Taylor; they wanted me to see what had been done. I went to the clerk's office and asked for the papers in that case, and looked for the amount due by the bill. I also spoke to Alden to know if he had any receipts, and he gave me some. I found out amount due and looked at proceedings in the case. I saw the affidavit of publication was made before order authorizing it had been filed. I told Rague and Taylor of it. After this, in the spring of 1852, I was in court, and Tallman applied for leave to file order of publication *nunc pro tunc*. I appeared in the case and objected to this being

done. I appeared for Rague. I finally made this arrangement with Tallman ; that if he would not advertise, so that we could have six months, I would waive the objection, and he should not take a decree till next term, or if he took a decree he was to stay the proceedings. This arrangement was made in open court, and Taylor was present." The witness is here shown the endorsements on the back of the order of publication, and hereinbefore set forth. He looks upon it and says : " The endorsement on the back of the order is substantially as I agreed with Tallman: It is in the handwriting of Tallman. I was present in court when the decree was taken, and made no objection. I think Tallman stated what had taken place at the previous term as I have stated it here. I said we had got all the time we could, and I had no objection to his taking a decree. On his cross-examination by the counsel for the plaintiff he said : I intended to do what I did in that case. After I had looked at the papers as above stated, I drew a notice of appearance, gave it to Taylor and told him to file it in the clerk's office. I think Taylor's name was signed to it, but am not certain. I did not serve or file the notice."

The counsel for the defendant then called Wm. M. Tallman as a witness, who being first duly sworn, testified in substance as follows : The record in the suit aforesaid of Charles D. Fitch against James G. Alden and others, being first shown to him, he looks at it and says : " I was one of the solicitors for the complainant in this suit. I think I received a written notice of retainer from Taylor and Niel as solicitors for Rague in that suit. I am not positive, however, that it was in writing. Rague removed to Chicago in 1851. Rague and Taylor came to my office several times after the suit was commenced, to talk about the suit. Taylor and Niel acted as solicitors for Rague in the cause. In the fall of 1851 Taylor and Niel agreed with me to put the cause over till the spring of 1852, and in the spring of 1852 I made motion to file order and take bill as confessed as of September term, 1851. Niel appeared in court as a solicitor for Rague, objected, and the motion was denied, and I made a new motion and served notice on Taylor and Niel of it, for

7th April, 1852. Taylor and Niel then in open court, April 7th, 1852, consented to have order pro confesso filed and entered, and I was to wait till fall for decree, and I did not take decree till October, 1852."

All the foregoing testimony of the witnesses Hiram Taylor, James Niel and William Tallman, was taken under objection interposed by the plaintiff's counsel. He insisted at the time that an appearance could not be proved by parol, and their testimony was admitted, subject to objection.

Here the Judge of the court interrupted the further examination of the witness Tallman, and stated that he had permitted the examination of said witness under very serious doubts as to the competency of the testimony, that he was now satisfied that he was extending the rule too far, and giving too much latitude to suffer the records of this court thus to be proved by parol, that he thought their testimony, however, established the fact beyond a doubt that there never was a general appearance in the case for Rague, that all that Taylor and Neil did was to resist the proceedings on the part of the complainant and put off the suit as long as they could, that they were employed for that express purpose, the objection they took went to the jurisdiction of the court, and that the proceedings showed most clearly that the court never acquired any jurisdiction over the defendant Rague, and on that account the record of the foreclosure suit was not proper evidence to go to the jury ; and the defendant's counsel excepted.

The defendant also made claim under a tax title, but no notice is taken of it in the opinion of the court.

The jury, under the instructions of the court, found for the plaintiff, who had judgment.

*J. A. Sleeper,* for appellant.

The decree of sale and the sale under it to William M. Tallman, vested in him *the legal title,* which was subject only to be defeated by redemption by some one not made a party to the foreclosure suit; that is to say, by Rague or his assignee of the equity of redemption. That could not be effected by an

action of ejectment. The only remedy which the plaintiff had was by bill in equity to redeem. *Fischer's vs. Kramer's Lessees*, 16 Ohio Reports 125 ; 2d Blac. Com. 158, Powell on mortgages 4, 6 ; *Parsons vs. Wells et al.*, 17 Mass. 419 ; *Watson and Polhemus vs. Spence*, 20 Wend. 260. The record was competent evidence to be submitted to the jury, even though it appeared thereby that Rague had not been served with process, and did not appear, for, the filing of the bill by Fitch and service of subpœna on James G. Alden, who was a necessary, or at least a proper party, gave the court jurisdiction over their persons, and jurisdiction over the subject matter being vested in it by law, it was competent for it to hear and determine the case between the parties, and to enter a decree for the amount due and unpaid upon the note and mortgage, for the sale of the mortgaged premises, and foreclosure of all their rights therein. Such a decree would bind the complainant and Alden. The sale under such a decree would vest in the purchaser the title which Fitch had under the mortgage, and which by the failure to pay the debt secured by it had become absolute at law, even though the owner of the equity of redemption was not before the court. The decree of sale and a sale under it operated upon the title of all persons before the court, whether that were a legal or equitable title ; and the purchaser acquired whatever title the parties before the court had in the premises. A mortgage is a conveyance of lands with a defeasance ; and after condition broken the title at law becomes absolute in the mortgagee. At the common law he might bring his action of ejectment against the mortgagor or his assigns ; or he might, if he found the possession vacant, enter and hold the possession. He may *now* enter if he can find the possession vacant, and protect that possession by his mortgage ; but the statute has prohibited him from maintaining an action of ejectment to recover possession from the mortgagor, or his heirs or assigns. The mortgagor and mortgagee are alike protected ; neither can maintain an action against the other who may be in possession. The statute protects the mortgagor, and the common law the mortgagee.

The mortgagee may convey the lands by deed, and such deed will enure to his grantee as an assignment of the mortgage. 16 Ohio R. 125.  17 Mass., 421.  20 Wend., 260.

But Rague, the grantor of the plaintiff, was a party named in the bill, and in the decree.  He is, by the terms and positive language of the decree, barred and foreclosed of all equity of redemption in the mortgaged premises.  He is ordered to let the purchaser into possession upon production of the commissioner's deed and the order confirming the sale, after the order becomes absolute.

I think the learned judge fell into a most palpable error. For the fact that Rague is named in the record, the pronouncing of the decree against him and entry of it in the case, were evidence of the regularity of all the proceedings, and that all the parties named in the bill were properly before the court.  Nay more; the decree *was decisive upon the question of jurisdiction*, and could not be contradicted by any extraneous evidence, when set up as a protection to a purchaser under it.  It is very doubtful if this court would have reversed the decree on appeal. *Hart vs. Scxias*, 21 Wen. 40.  *Foot vs. Stevens*, 17 Wen. 483. *Watson vs. Spence*, 20 Wen. 265 Cowen justice says, "service of process I admit, must be presumed when the party is named." *Voorhies vs. the Bank of the United States*, 10 Peter's Reports 449.  *Grignon.s lessees vs. Astor et al.*, 2 Howard U. S. Reports. 319.  *Peacock vs. Bell*, 1 Saund. 72.  *Brown vs. Wood*, 17 Mass. 68, Jackson justice says, "upon common presumptions, in favor of every judicial tribunal, *acting within its jurisdiction*, we must suppose that all persons concerned had due notice."

The court decided that under the law of this state, the mortgagee had only a lien on the mortgaged premises, and could neither maintain ejectment against the mortgagor or his assigns to recover the possession of the mortgaged premises after condition broken, nor could he legally enter after condition broken, if he found the possession vacant, and defend that possession, against the mortgagor or his assigns, before foreclosure of the mortgage.  This doctrine we controvert, and cite as authori-

ties: 16 Ohio Reports 125, and cases there cited. 17 Mass. 421-and cases there cited. *Astor vs. Hoyt,* 5 Wen., 617, by Savage, Chief Justice, *Jacksox ex. Dem. Minkler vs. Minkler,* 10 John. Reports 480. *Phyfe vs. Riley,* 15 Wen. 248. *Bell vs. the Mayor of New York,* 10 Paige 70, by Walworth, Chancellor. 3d McLean 448. 9 Wheaton 449. 2 Halstead 178.

*Walter S. Cowles* and *J. C. Sloan* for respondent.

*First.*—The first question in the case is, did the judge err in excluding the record of the case of *Charles D. Fitch vs. James G. Alden et al.,* from the jury, Sec. 14, Rev. Stat., p. 414?

From the bill it appears that Rague was "*residing in the city of Milwaukee,*" and hence that Milwaukee county was "*the county*" where he could be found, and that the subpoena should have been issued to that county. It is only upon the return of subpoena "issued to the county where the defendant may be found," that the court is authorized to proceed. Had there been a subpoena issued to Milwaukee county, and returned, the order of publication is void, because it is not "made to "appear by affidavit or otherwise, to the satisfaction of the "judge, that such defendant is *out of the State,* or cannot be "found therein, or that he conceals himself within the State." The recital in the order is, "it being made to appear that the "defendant does not reside in *Rock County, and cannot be found* "*therein.*" But it is alleged that this is not sufficient. That when the proceedings are in a court of general jurisdiction, in the language of Cowen J. in *Watson vs. Spence,* 20 Wen. 260, "Service of process must be presumed where the party is named." But the presumption must cease when from the record in the case it appears that process never was served, and that the court acquired no jurisdiction. *Abrams vs. Jones et al.,* 4 Wis. 806, seems to settle this question. *Latham agt. Edgerton,* 9 Cow., 327. *Burcle vs, Eckart,* 3 Denio 279. *Spencer C. J. in Mills vs. Martin,* 19 John. 31. *Starbuck vs. Many,* 5 Wen. 148. *Barden vs. Fitch,* 15 John. 121.

But no authority can be found which maintains that the presumption of jurisdiction shall continue when the record

shows a want of jurisdiction, or where the whole record being before the court, jurisdiction does not appear. *In re., Booth and Rycraft*, 3 Wis., 181. But it is claimed, though the court did not acquire jurisdiction by the return of "not served" to the subpœna, by the sheriff of Rock county, and the order of publication, that the defendant Rague, appeared in the cause, and thus conferred jurisdiction. The whole record of the cause contradicts this assumption. An order of publication is granted against Rague as a defendant, who has not been served, and who has not appeared, and even the order taking the bill as confessed, dated March 13th, 1852, and filed April 7th, 1852, recites "*and no appearance* plea, answer, or demurrer having been made, filed or served by, or on the part of" John F. Rague, and the decree is based upon this order taking the bill as confessed.

But the appellant claims he was entitled to prove an appearance by parol. To do so in this case would be to contradict the whole record, for every proceeding in this cause, assumed or asserted the non appearance of Rague. Again, proceedings in courts of justice must appear by the record, and when the whole record being produced, if it appears the court had not jurisdiction, or if it does not appear that the court had jurisdiction, the whole proceeding is *coram non judice*. The judgment of the court cannot, nor can any order in the cause be proved by parol, *a fortiori* the jurisdiction of the court upon which the validity of every step in the cause depends, cannot be thus proven.

"The appearance of the defendant is triable by the record." 1 Tidd's Pr., 238, Croke, Eliz., 466. "The discontinuance of an action entered in court must be proved by the record, or an authenticated copy. *Shelden vs. Frink*, 12 Pick., 568." "The adjournment of a town meeting cannot be proved by parol." *Taylor vs. Henry*, 2 Pick. 402.

An appearance to object to an irregularity is not an appearance in the cause. *Malcolm vs. Rogers*, 1 Cow. 1. *Smith Ch. Practice*, 159, Note A.

But it is claimed that the defendant Rague appeared at the

hearing, and submitted to the decree, so as to bring him within the rule in *Capel vs. Butler*, 2 Simons & Stewart, 457. The cases of *Boyan vs. Bullard*, 1 Russell & Mylne, 69. *Crocker vs. Quayle* , Id., 539. *White vs. Hall*, Id., 382, and *Hill vs. Rimel*, 2, Mylne & Craig, 641, all affirm the rule laid down in *Capel vs. Butler*, that a party not served may, by appearing at the hearing and submitting to be bound by the decree, waive the want of service. But this appearance and submission must appear by the record. That such is the practice clearly appears from *Hill vs. Rimel*, 2 Mylne & Craig, 641 and *White vs. Hall*, 1 Russell and Mylne, 332.

*Third.* It is objected that the appellee being mortgagee in possession, the mortgagor or his grantees cannot maintain ejectment against him. We deny both the premises and conclusions. William H. Tallman is not mortgagee in possession. The mortgage was assigned by Fitch to William M. Tallman, the father of the appellant, and the conveyance of the whole quarter section by William M. Tallman to the appellant, after suit commenced, did not operate by way of assignment of the mortgage to the appellant so as to constitute him mortgagee in possession. In *Watson vs. Spence*, 20, Wen., 261, this question was not involved, and the remark of Cowen J. cannot be considered as deciding it. *Jackson vs. Bronson*, 19 John, 325. *Ellison* vs. *Daniels*, 11 New Hampshire R. 274; *Jackson* vs. *Willard*, 4 John. 42; *Southern* vs. *Mendum*, 5, N. H. R. 420; *Aymar* vs. *Bell et al.* 5 John., Ch. 570; *Bell* vs. *Morse*, 6 N. H. 205; Rev. Stat. 620, §11; *Diman vs. Diman*, 5 Halst., 158; *Nathan vs. Fen* 1 Id., 478.

Hitherto the mortgagee, by giving notice to the tenant to pay rent to him after condition broken, could collect the rents of the tenant. And the tenant could set up his attornment to the mortgagee as a defense to an action brought by the mortgagor, for rent. *Jackson vs. Stearnbug.*, 20 J. R., 49.

*By the Court*, COLE, J.   In the case of *Gillett vs. Eaton*, which was decided at the last term of this court, it was held that the grantee of the mortgagor, could not maintain an action of ejectment against the assignee of the mortgagee who is lawfully in possession of the mortgaged premises after condition broken.   We suppose this question to have been substantially passed upon and settled in quite a number of cases found in the books; cases which appeared to have been examined and decided with much care and consideration, and which were supported by the most conclusive and satisfactory reasons, and soundest principles of the common law.   *Jackson ex. dem. Ireland vs. Hull*, 10 J. R., 480; *Merritt vs. Bowen*, *et. al.*, 7 Cowen, 13? *Phyfe vs. Riley*, 15 Wend., 248; *Parsons vs. Wells et. al.*, 17 Mass., 419; *Frische vs. Kramer's Lessees*, 16 Ohio, 125; 1 Powell on Mort., chap. 7, cases in notes; Adams on Ejt., chap.'s 3 and 4, and cases cited in notes.   It would be a waste of time, and wholly unnecessary, to enter upon a general discussion of this doctrine, and it is sufficient to say, that as it would be unreasonable and monstrous to sanction the principle, that the grantee of the mortgagor would take the estate free from the incumbrance, so, as it apears to us, it would be unwise and inequitable to permit the grantee of the mortgagor to obtain the possession as against the mortgagee or his assigns while the mortgage debt remained unpaid.   Under such circumstances, if the grantee desired to obtain possession of the premises, he could file his bill to redeem, and the court could properly aid him in obtaining possession after the incumbrance was discharged.   In this way equity could be fully done between all parties.   Aga.n, if the court should put the mortgagor or his grantee in possession of the premises without requiring him first to pay off the mortgage, it might be called upon at the next moment in a proceeding to foreclose and sell the mortgaged premises to turn him out and reinstate the mortgagee or his assignee. But all this unnecessary expense and fruitless litigation can be avoided, and the rights and interests of the parties most completely subserved and protected by adhering strictly to the

Tallman vs. Ely.

doctrine, that if the morgagee or his assigns, after forfeiture, obtains possession lawfully, the mortgagor, or those claiming under him should not recover the possession without paying the money secured by the mortgage. It is well understood that at common law a mortgage was considered as a convey-ance of the legal estate, subject to be defeated by the perform-ance of the condition, and that if the condition was not strictly complied with, the estate became absolute in the mortgagee. 1 Powell on Mort., *passim.* Hence, after forfeiture of the mortgage and notice to quit, it has frequently been held that the mortgagee could maintain ejectment against the mortgagor, and recover possession of the premises. 17 Mass., 421; 2 J. R., 75; 4 J. R., 186; 17 Id. 300; 18 Id. 487; 13 Vt., 653. But our statute provides that the mortgagee shall not bring his action of ejectment before foreclosing the equity of redemp-tion; Sec., 53, chap. 106; or in other words, he must com-plete his title before he shall be permitted to recover at law upon the strength of it. Still, if he is lawfully in possession after condition broken he will not be turned out until his debt is paid.

Applying these principles to the case under review, we think it clearly appears that the circuit court erred in ruling out the record of the proceedings in the foreclosure suit of *Fitch vs. Alden, et al.,* which was offered in evidence by the defendant, even if the proposition be admitted, (which cannot be maintained,) that this record affirmatively showed that the circuit court never acquired jurisdiction of the person of the grantor of the plaintiff. For manifestly the necessary conse-quence and result of the decree of foreclosure and sale was to transfer to and vest in the purchaser at the sale all the estate and title in the mortgaged premises, which had been previously vested in the persons who were parties to the suit, and bound by the decree. Confessedly among those parties, and concluded by its proceedings, were the mortgagee, Fitch, the mortgagor, James G. Alden, and some others. And can it be denied that if Fitch had been in possession of these premises under his mortgage, after default in paying the mortgage debt, and could

have successfully resisted an action of ejectment brought by Alden or any one claiming under him, that Tallman, the purchaser of the premises at the sale made by the commissioner under the decree of the circuit court, and in whom all the estate and title of the parties at the commencement of the suit had become fully vested, could not likewise protect himself against the mortgagor or any person claiming through the mortgagor by conveyance subsequent to the mortgage? Whatever estate or title the mortgagee had in the mortgaged premises, became merged in the decree, and passed to the purchaser at the judicial sale. Whatever estate or title the other parties to the suit had, at its commencement, passed by the same act to the same party. Such it would seem must be the necessary and inevitable consequence and result of the decree of foreclosure and sale, if any effect whatever is given to them. And these propositions as to the effect of the proceedings, and sale, appear so natural, so reasonable, and so obvious, that it is not easy to perceive how there could be room for difference of opinion about them; yet we have been referred to the case of *Watson vs Spence*, 20 Wend. 260, which establishes a contrary doctrine, and upon the strength of which it is understood the circuit court ruled out the record in the case of *Fitch vs. Alden et al.* We have examined the case of *Watson vs. Spence*, and are free to admit that unless it can be sustained by the peculiar clauses of the Master's deed, executed under the decree of foreclosure, we cannot understand upon what principle it rests. The reasoning of the court is ably reviewed, and to our judgment most satisfactorily and conclusively answered in the case of *Frische vs. Kramer's, Lessee.* The two cases are strictly analagous, and the Ohio case appears to be more consonant to sound reason and authority, and we feel at liberty to adopt it. We might perhaps feel called upon to enter somewhat at length into the discussion of propositions so adversely decided in the courts of Ohio and New York, and which have been already advanced, had we not concluded that this case could be placed upon ground which will relieve it from the weight of the authority even of *Watson vs. Spence.* We come therefore to

consider whether the record in the case of *Fitch vs. Alden*, when fairly interpreted, shows that the circuit court had jurisdiction of the person of John F. Rague, so as to bind him in that suit. To determine this question it will not be necessary to give a full history of the various steps taken in the foreclosure suit.

It is sufficient for our purpose to state that Rague was made a party to the suit and that the bill alleged that he was a resident of the city of Milwaukee. The sheriff returned the *supoena* not served upon him, and steps were taken to bring him in by publication, as in the case of non-resident defendants. In the progress of the suit the usual order *pro confesso* was filed April 7, 1854, reciting that an order had been made for the publication, &c., which order had been duly published, and that Rague and other defendants had neglected to enter their appearance in the cause and file and serve their plea, answer or demurrer, and that therefore the bill was taken as confessed as to them. Conceding that up to this time the proceedings had been so irregular that the court had not obtained jurisdiction over Rague, either by publication or otherwise, what do we next find? At the October term of the circuit court of 1852, a final decree of foreclosure and sale was entered up, which stated that the cause came on to be heard at that term of the court upon the bill taken as confessed as to *all the defendants* and *was argued by counsel*, and the court, upon consideration, &c., decreed as follows, &c. Now what is the fair reasonable presumption arising from this record as to the jurisdiction of the court over the parties? Must we not presume that the circuit court acquired jurisdiction of Rague, properly and fully before rendering a decree against him, and that if it had not obtained jurisdiction over him by the proceedings by publication, that Rague, between the 7th of April, 1852, when the order *pro confesso* was entered, and the 2d of October, 1852, when the final decree was rendered, had made his proper appearance in the cause? Can it successfully be contended that this record shows affirmatively that Rague did not enter his appearance by himself or attor-

ney in this time? Certainly this would be a most violent and unauthorized presumption from this record. The circuit court is a court of general jurisdiction, and acting upon a subject matter confessedly within its jurisdiction, and can we conclude from the record that the court rendered a decree against parties over whom it had no jurisdiction? But it appears that the defendant below offered parol evidence in support of this record for the purpose of showing that this natural presumption in regard to the jurisdiction of the circuit court over Rague in the foreclosure suit was strictly and precisely according to the fact. The witnesses, Taylor and Neil, were introduced, who testified that they had a general retainer from Rague, and as solicitors, actually appeared for him in the suit about the time the order *pro confesso* was filed, and got a continuance of the cause to the fall term of the court. Other evidence to the same effect was offered, but the court held that it was incompetent to show an appearance of Rague by parol; that this fact could only be established by the record alone, and the testimony was excluded from the consideration of the jury.

But we are clearly of the opinion that the testimony offered was competent to show, and did in fact show, that Rague had entered an appearance in the cause before the decree of foreclosure was entered up, and that consequently he, and all claiming under him, must be bound by the proceedings in that suit. He had bought the property subject to the mortgage, and having been made a party to the foreclosure suit, and having appeared by his solicitors in the case, the decree as to him was final and conclusive. The evidence offered to show his appearance did not tend to vary or contradict the record, but to support it, and is entirely consistent with the natural presumption that would arise from the record. In the case of *Brewer vs. Holmes*, 1 Met., 288, where a petition had been presented for a review of a judgment of the court of common pleas, recovered against the petitioner by default, the petitioner alleged that he was out of the State at the time of the service of the writ, and had no notice of the suit until after judg-

Tallman vs. Ely.

ment; yet the court held that evidence was admissable to contradict the officer's return, which stated that he gave the party a summons for his appearance at court; and that though the record showed that the petitioner appeared to the original action by attorney, that evidence was likewise admissable to establish the fact that the appearance was at the request of a third person without the petitioner's knowledge. If such evidence was competent in the case just cited, it cannot admit of doubt that it was entirely competent for the defendant below to show by parol that Rague had entered an appearance in the foreclosure suit; such evidence in no wise tending to contradict or vary the record, but to sustain and support it.

It follows from the view we have taken of this case that there must be a new trial.