Slaughter vs. Bernards.

SLAUGHTER, Appellant, vs. BERNARDS, Respondent.

*September 11 — October 22, 1897.*

*Mortgagee's title: Extinguishment of equity: Appeal: Evidence: Trusts.*

1. Under the provisions of Terr. Stats. of 1839 (sec. 20, p. 181; sec. 53, p. 257; sec. 19, p. 314; sec. 21, p. 315), a real-estate mortgage vested in the mortgagee a mere lien, until after the extinguishment of the equity of redemption in the manner provided by law, and even a taking possession of the mortgaged premises by such mortgagee did not operate to vest in him the title to such premises. Under sec. 6, p. 162, of those statutes, the mortgagor could not extinguish his right by an instrument referring to the deed given him by the mortgagee and to his mortgage back, and reciting that by consent and agreement of the parties to those instruments they are hereby canceled and held for naught.

2. A judgment which is right on the pleadings and evidence will be affirmed on appeal notwithstanding conclusions and findings of the trial court, which, if correct, might require a reversal.

3. A deed of mortgaged premises by the mortgagee thereof in trust for a married woman, and subject to her control and disposal during her coverture, and after her death in trust for her husband upon like condition, and after the death of the husband in trust for the use and benefit of their children, gives to the first beneficiary the absolute power to dispose of the property so conveyed in trust, i. e., the mortgage debt and the lien, to the exclusion of the subsequent beneficiaries.

4. Such a deed by a mortgagee of land does not convey title to the land itself, but merely vests in the trustee a lien thereon, which constitutes no foundation for an action of ejectment by him or by one who claims the benefit of the trust.

APPEAL from a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Affirmed.*

This was an action of ejectment. It was tried by the court and resulted in findings of fact and conclusions of law, covering all the issues raised by the pleadings, which may be stated in substance as follows: On the 12th day of February, 1840, Ramsay McHenry, a resident of the state of Maryland, was the owner in fee simple of the lands described

in the complaint, situated in Dane county, Wisconsin, which
he on that day, by deed with full covenants, conveyed to
George H. Slaughter. At the same time George H. Slaugh-
ter, by mortgage, conveyed the lands back to Ramsay Mc-
Henry to secure the payment of $720. Both deed and
mortgage were duly recorded in the proper office in Dane
county, Wisconsin. George H. Slaughter entered into the
actual possession of the lands and remained in such posses-
sion till he surrendered the same to Calvin G. Williams, as
hereinafter mentioned. On the margin of the record of the
mortgage the following words appear: " This mortgage
canceled by agreement, see pages 303, 304, vol. 4 of deeds.
I. W. Bird." At the pages referred to appears a record
which was offered in evidence, purporting to be of an in-
strument executed August 5, 1843, witnessed by one witness
and duly acknowledged in this state, signed by Ramsay
McHenry by James McHenry Boyd, his attorney in fact,
and George H. Slaughter, referring to the before-mentioned
deed and mortgage by way of recitals, and declaring as fol-
lows: " By consent and agreement of the parties to said in-
struments they are hereby canceled and held for naught."
The only proof of the authority of James McHenry Boyd
to execute any instrument for and in the name of Ramsay
McHenry is a record offered in evidence, purporting to be
of a power of attorney executed by Ramsay McHenry to
James McHenry Boyd, April 29, 1843, and acknowledged
before a notary public in the state of Maryland. The rec-
ord bears date August 3, 1843.

A record from the proper office, dated August 6, 1843,
was received in evidence, purporting to be of a deed exe-
cuted August 4, 1843, in this state, and duly witnessed and
acknowledged, signed by Ramsay McHenry by his before-
mentioned attorney, conveying the lands in question to Ga-
briel T. Long in trust, first, for the benefit of Mildred Ann
Slaughter and subject to her control and disposal during

Slaughter vs. Bernards.

her coverture with George H. Slaughter; second, after her death, in trust for George H. Slaughter, upon like condition; third, upon the death of George H. Slaughter, in trust for the benefit of the heirs of George H. Slaughter and Mildred Ann Slaughter, his wife. A record also was offered in evidence, and received, of what purports to be a mortgage executed at the same date as the trust deed, whereby Gabriel T. Long, trustee, conveyed the land to Ramsay McHenry to secure the payment of $1,023.50.

After the trust deed purports to have been made, the following mortgages, affecting the premises, and together covering all the premises in question, were made: May 10, 1848, George H. Slaughter, Mildred Ann, his wife, and Gabriel T. Long, trustee, to Calvin G. Williams, to secure the payment of $350, recorded September 23, 1848; September 16, 1848, between the same parties, to secure performance of the conditions of a bond, recorded September 26, 1848; October 23, 1847, Gabriel T. Long, George H. Slaughter, and Mildred Ann, his wife, to Edward Campbell, to secure $144.83, recorded October 25, 1847. The several mortgages were foreclosed in chancery, all the mortgagors being made parties defendant. A judicial sale was made to Calvin G. Williams pursuant to the judgment of foreclosure rendered as to each such mortgage. Each such sale was confirmed and a sheriff's deed was duly issued to said Williams, and recorded, pursuant to each such sale, whereby, on or before March 27, 1857, he became possessed of all the title to the premises in question, and he was thereafter let into possession of such premises under said deed in 1857, and he and those claiming under him have been in continuous, uninterrupted, and adverse possession of the land from that time down to the commencement of this action.

May 3, 1858, Thomas C. Baker duly recorded a tax deed covering the lands, which deed was duly issued to him on the tax sale of 1855 for delinquent taxes on the lands for the

year 1854. The title thus conveyed to Baker thereafter, through mesne conveyances, the last being recorded January 19, 1860, was vested in Calvin G. Williams. The title which Williams obtained through the conveyances to him, before mentioned, passed to his heirs upon his death, which occurred prior to 1868, and thereafter, through various conveyances, the last being a deed with full covenants from Jacob Lenz, dated October 15, 1868, recorded November 13, 1868, the title to the lands passed to and became vested in defendant.

When the deed from Lenz to defendant was made the lands were inclosed, and defendant, under such deed, entered into possession of such lands, claiming title thereto by virtue thereof, exclusive of any other right, and has ever since been in such possession, exclusive, continuous, and adverse to the whole world. This action was not brought till the expiration of more than ten years after November 1, 1878. Defendant took possession of the premises as aforesaid without notice of any adverse claim thereto whatever. George H. Slaughter died January 4, 1894. Mildred Ann, his wife, died October 10, 1890. Plaintiff is their son and only heir at law. Under the laws of the state of Maryland, at the time of the execution of the pretended power of attorney from Ramsay McHenry to James McHenry Boyd, it was essential to the conveyance of lands in that state that the instrument of conveyance be acknowledged according to the laws of that state. Such power of attorney was not so acknowledged.

There were some other facts found by the court, but they are omitted as not necessary to the questions discussed in the opinion and not affecting in any way the result.

As conclusions of law the court found that by the deed of February 12, 1840, to George H. Slaughter, he became the owner in fee of the premises in question; that the cancellation instrument executed thereafter did not affect such title; that Calvin G. Williams acquired, through the sheriff's deeds

on foreclosure, a good title in fee to the lands; that by the terms of the trust deed the trustee held the legal title, subject to the control of Mildred Ann Slaughter, and that the mortgages made by such trustee, Mildred Ann Slaughter, and her husband conveyed the whole estate to the mortgagees as security; that defendant, by reason of the facts, through the foreclosure proceedings, the sheriff's deeds based thereon, and the chain of title therefrom down to him, became the owner in fee simple of the lands in dispute, October 5, 1868, and has so continued down to the present time; that Calvin G. Williams rightfully re-enforced his title by the Baker tax title, and that such title, by reason of the facts, inured to the benefit of the defendant and cut off the rights of plaintiff, if he, or those under whom he claimed, had any at the time of the making of the tax deed; that plaintiff's action is barred by the statute of limitations of this state, and that defendant is entitled to judgment.

Judgment was entered in accordance with the findings and conclusions, and the plaintiff appealed therefrom on exceptions duly filed.

For the appellant there were briefs by *Bashford, O' Connor & Aylward*, and oral argument by *R. M. Bashford*. Among other things, they contended that the title to the land was in McHenry as mortgagee, and that the agreement of cancellation established the title absolutely in him.    Terr. Stats. of 1839, p. 257, sec. 53; *Tallman v. Ely*, 6 Wis. 242; *Marvin v. Titsworth*, 10 id. 320; *Hutchins v. Da Costa*, 88 id. 371; *Telford v. Frost*, 76 id. 174; *Kneeland v. Schmidt*, 78 id. 348; *O'Donnell v. Brand*, 85 id. 101.    The mortgage given by the trustee to his grantor, and the subsequent mortgages by him and the life tenants, conveyed no more than the life estate.    R. S. 1878, sec. 2202; R. S. 1858, ch. 86, sec. 4; *Melms v. Pabst B. Co.* 93 Wis. 140; *Pattison v. Babcock*, 130 Ind. 474; *Brant v. Virginia C. & I. Co.* 93 U. S. 326; *Ætna Ins. Co. v. Brodinax*, 48 Fed. Rep. 892.    The

purchaser at the sale under foreclosure of the latter mort-
gages, under whom the defendant claims, took only the title
of the mortgagors. S. & B. Ann. Stats. secs. 2212, 3169;
*Pelton v. Farmin,* 18 Wis. 223; *Whitney v. Robinson,* 53 id.
309, 314; 2 Jones, Mortgages, § 1646. The defendant's pos-
session could not become adverse to the plaintiff as remain-
derman until the death of the survivor of the life tenants.
*Barrett v. Stradl,* 73 Wis. 385; *Falck v. Marsh,* 88 id. 683;
*Mettler v. Miller,* 129 Ill. 643; *Elder v. McClaskey,* 70 Fed.
Rep. 529.

For the respondent there were briefs by *F. J. & C. F.
Lamb,* attorneys, and *B. W. Jones,* of counsel, and oral argu-
ment by *F. J. Lamb* and *B. W. Jones.*

MARSHALL, J. There is no controversy but that, on the
12th day of February, 1840, Ramsay McHenry was the owner
in fee simple of the lands described in the complaint, and on
that day conveyed the same to George H. Slaughter and re-
ceived back a mortgage thereon to secure $720. Was the title
thereafter affected by the cancellation instrument? That is
the first question presented by this appeal. The trial court
found in the negative. To that appellant excepted, contend-
ing that the legal title was in McHenry under the mortgage,
that an equitable interest only remained in Slaughter, which
could be surrendered by acts of the parties and operation of
law, without any conveyance in writing, and that the can-
cellation instrument, the trust deed made on the faith of such
instrument, and the mortgage back from the trustee estab-
lish a surrender by Slaughter to McHenry of the equitable
title, an acceptance by the latter, and action relying on such
surrender and acceptance, which operated to merge the equi-
table in the legal title by estoppel. Sec. 2302, R. S., was then
sec. 6, p. 162, Terr. Stats. of 1839. It provides that "no es-
tate or interest in lands, other than leases for a term not
exceeding one year, . . . shall be . . . surrendered

Slaughter vs. Bernards.

or declared, unless by act or operation of law, or by deed or conveyance in writing," etc., thus clearly recognizing the power to surrender a mere interest in lands, such as a lease for more than one year, or the equitable interest of a person under a land contract, without a conveyance in writing, by act or operation of law. *O'Donnell v. Brand*, 85 Wis. 97; *Goldsmith v. Darling*, 92 Wis. 363. In some jurisdictions the surrender and cancellation of an unrecorded deed, with intent to revest the title in the vendor, is given that effect by applying the doctrine of estoppel. *Mussey v. Holt*, 24 N. H. 248; *Farrar v. Farrar*, 4 N. H. 191. But the rule is the other way in this state. *Parker v. Kane*, 4 Wis. 1; *Albright v. Albright*, 70 Wis. 528; *Rogers v. Rogers*, 53 Wis. 36, which are in accord with the great weight of authority in this country and England. *Walker v. Renfro*, 26 Tex. 142; *Bailey's Adm'r v. Campbell*, 82 Ala. 342; *Jeffers v. Philo*, 35 Ohio St. 173; *Killey v. Wilson*, 33 Cal. 690; *Somers v. Pumphrey*, 24 Ind. 240; *Potter v. Adams*, 125 Mo. 118; *Hyne v. Osborn*, 62 Mich. 235; *Roe v. Archbishop of York*, 6 East, 86. In *Cranmer v. Porter*, 41 Cal. 462, the law governing the subject is stated thus: "It is a familiar rule of law that the destruction or cancellation of a deed, after delivery, even though it be done with the consent of all the parties to it, and for the express purpose of restoring the title to the grantor, cannot work that result."

We apprehend it would not be contended that, if the legal title to the land were in Slaughter and a mere lien in McHenry, the cancellation instrument, together with the circumstances above referred to, changed the legal title to the latter. So appellant starts out with the contention that the common-law rule then prevailed, and that such title was in McHenry under the mortgage.

It follows from what has preceded that the question of whether in 1840 a real-estate mortgage carried with it the legal title or a mere lien is important. That there exists some

doubt on the subject as to what the law then was, at this late day, is not to be wondered at, inasmuch as the question was not fully discussed in this court till *Brinkman v. Jones*, 44 Wis. 498; and though Mr. Justice TAYLOR, in a very exhaustive opinion, then stated that the common-law rule was entirely changed, yet he reached the conclusion by reasoning from circumstances, without reference to any statutory change or any previous adjudication of this court one way or the other. So, though since that time the doctrine that the legal title does not pass with a mortgage, but remains in the mortgagor till the equity of redemption be foreclosed, has been deemed firmly established, the idea has yet prevailed, generally, that such was not always the law in this state and before the state government was organized, and just when the change took place has been left very much in obscurity. The change is not the result of a direct legislative enactment to that effect. It has come about by legislation in an indirect way and by a gradual development and application of equitable principles by the courts. The gradual change in the character of a mortgage, from the time when it carried the whole title at law and there was no interest left in the mortgagor that could be protected in equity except upon strict performance of the conditions of the mortgage, to the final establishment of the new doctrine, whereby the mortgagee takes a mere lien which can be converted into a legal title only by extinguishing the equity of redemption, is said by eminent text writers to be "one of the most striking triumphs of equity over the rigors of the common law, that exists in our jurisprudence." The change was recognized early in this state as evidenced by many judicial observations on the subject, falling short, however, of establishing the doctrine that the legal title remained in the mortgagor.

In *Byron v. May*, 2 Pin. 443, Mr. Justice HUBBELL said: "Not only the original severity of the common law, treat-

ing the mortgagor's interest as resting upon the exact per-
formance of a condition, and holding the forfeiture or the
breach of a condition to be absolute, by nonpayment or
tender at the day, is entirely relaxed; but the narrow and
precarious character of the mortgagor's rights at law is
changed under the more enlarged and liberal jurisdiction of
the courts of equity." In *Tallman v. Ely*, 6 Wis. 244, Mr.
Justice COLE said, in effect, that at common law it was well
understood that a mortgage conveyed the legal title, and
that after forfeiture of the mortgage and notice to quit, it
has been held that the mortgagee could maintain ejectment
against the mortgagor and recover possession, and, continu-
ing, said: "But our statute provides that the mortgagee
shall not bring his action of ejectment before foreclosing the
equity of redemption (sec. 53, ch. 106, R. S. 1849); or in
other words, he must complete his title before he shall be
permitted to recover at law upon the strength of it." This
language, without meeting the point directly, shows clearly
that the court as then constituted recognized that the stat-
ute referred to had operated to change materially the char-
acter of the mortgagor's title, yet it stops short of saying
that it was changed from the legal title to·a mere lien to
secure an indebtedness. In *Wood v. Trask*, 7 Wis. 566,
Mr. Justice COLE, speaking for the court, met the question
squarely in the following language: "Our statute [obviously
referring to the same statute cited in *Tallman v. Ely, supra*]
has essentially changed the rule of the common law in rela-
tion to the position of the fee of the mortgaged premises
after condition broken. The fee does not vest upon default
of the mortgagor, in the mortgagee, or his assignee. The
fee only vests upon sale on foreclosure."

Coming down to *Croft v. Bunster*, 9 Wis. 503, when only
Justice COLE of the former bench remained, DIXON, C. J.,
discussing a subject that did not necessarily involve the ques-
tion of the character of the mortgagee's interest, and with-

Slaughter vs. Bernards.

·out referring to former decisions of the court, said: " Patten
[the mortgagee] having the legal title to, and a valid lien
at law upon, the mortgaged premises, by virtue of the exe-
cution and delivery of the mortgage to him, could convey
that title and lien by assignment of the mortgage to the
plaintiff. His assignment to the plaintiff did so vest the
title in him.". The question which the court had before it
was whether Bunster, who received a deed from Smith as
security and with power to convey or mortgage, could there-
after mortgage the premises to Patten in his, Bunster's, in-
terest, and thereafter reconvey to Smith, and cause Patten,
for value, to assign the mortgage to Croft, and thereby vest
in the latter a valid claim upon the property for the mort-
gage debt. Obviously, whether the legal title passed by
the mortgage to Patten, or a mere lien, was immaterial to
the question. It was not intended by the court to decide
that question. What was said on the subject was mere *obiter
dictum*, hence lacks force as an adjudication of the question,
and was clearly considered so at the time, else it would not
have escaped the notice of Mr. Justice COLE, who had twice,
with the concurrence of all the members of the court, ex-
pressed a different view. Yet, coming as it did from so
·distinguished a source, and standing since without criticism
·even by the opinion of Mr. Justice TAYLOR in *Brinkman v.
Jones*, 44 Wis. 498, it is not strange that the idea has gen-
erally prevailed that the change to the present doctrine was
not finally judicially determined till the decision in that
·case, and that the date of the change was still left in ob-
·scurity, which was not relieved by what was said by Mr.
Justice ORTON in *Mason v. Beach*, 55 Wis. 607, that " the
common-law relation of mortgagor and mortgagee . . . has
been so changed by our statute and practice that the fee no
longer passes to the mortgagee, even upon condition broken,"
referring to *Wood v. Trask, supra,* and apparently overlook-
ing what was said in *Croft v. Bunster, supra.* For a long

period prior to *Brinkman v. Jones*, the language of Lord
DENMAN in *Higginbotham v. Barton*, 11 Adol. & El. 307
(1840), in regard to the state of the law then, in England, aptly
applies: "It is very difficult to attempt to define the precise
relation in which the mortgagor and mortgagee stand to each
other in any other words than those very words."

Going back and tracing the history of the change under
consideration, it is quite clear that it was complete as early
as 1839.    Sec. 53, ch. 106, R. S. 1849, referred to by Mr.
Justice COLE in *Tallman v. Ely*, 6 Wis. 244, as having worked
a change, was not then new.    It is identical with § 53,
p. 257, Terr. Stats. of 1839, and reads as follows: "No action
of ejectment shall hereafter be maintained by a mortgagee
or his assigns or representatives, for the recovery of the pos-
session of the mortgaged premises, until the equity of re-
demption shall have expired."    All the reasons which Mr.
Justice TAYLOR referred to as having worked a change, and
others that might have been stated, existed under the terri-
torial statute.    No conveyance was required after payment
of the debt, and performance of the conditions, to divest the
mortgagee of his interest.    The payment of the debt *per se*
extinguished the mortgage claim upon the land, and a mere
entry of the fact of payment, duly witnessed and acknowl-
edged on the record, barred the entry of the mortgage.    Terr.
Stats. of 1839, p. 181, § 20.    The interest of the mortgagee
could not be levied upon for his debts.    In case of his death
it passed to his personal representatives as personal property.
Terr. Stats. of 1839, p. 314, § 19.    Upon payment of the mort-
gage, the executor or administrator could discharge the
mortgage by an entry of record.    Terr. Stats. of 1839, p. 315,
§ 21.    Provision for extinguishing the equity of redemption
by foreclosure and sale, both by advertisement and in chan-
cery, existed then as now.    The mortgage lien was a mere
incident of the debt, and passed with a transfer of the debt
without any transfer of the mortgage in writing.    The in-

Slaughter vs. Bernards.

terest of the mortgagor was subject to levy and sale and passed to his heirs upon his death. It had all the elements of a title in fee, while the interest of the mortgagee had none of them.

Our whole system was the same substantially as in New York, and was largely adopted from that state, where the law was well settled long prior to such adoption, that the legal title remained in the mortgagor till extinguished by foreclosure. In *Runyan v. Mersereau*, 11 Johns. 534, decided in 1814, it was held that a mortgage at law as well as in equity was merely a security, and the mortgagee had but a chattel interest; that the legal title and the freehold were in the mortgagor. In *Wilson v. Troup*, 2 Cow. 195, Mr. Justice SUTHERLAND said: "A mortgage is a chattel interest. The freehold remains in the mortgagor." To the same effect is *Astor v. Hoyt*, 5 Wend. 603, where, in the opinion by SAVAGE, C. J., Lord MANSFIELD's language in a dissenting opinion in *King v. St. Michael's*, 2 Doug. 632, as follows: "It is an affront to common sense to say the mortgagor is not the real owner," was approved, and it was held, notwithstanding the rule of the English courts to the contrary, that in New York the mortgagor was the owner as against all the world, subject only to the lien of the mortgage. In an earlier case Lord MANSFIELD, the members of the court concurring (*Eaton v. Jaques*, 2 Doug. 455), held in accordance with his opinion above mentioned; and in *Astor v. Hoyt, supra*, the doctrine of the early case was said to be the established doctrine in New York. To the same effect are *Walton v. Cronly's Adm'r*, 14 Wend. 63; *Edwards v. Farmers' F. Ins. & L. Co.* 21 Wend. 467. Many other authorities might be cited, but enough has been said to settle beyond reasonable controversy that under the territorial statutes of 1839 a real-estate mortgage, till after the extinguishment of the equity of redemption in the manner provided by law, vested in the mortgagee a mere lien, and that a taking pos-

session even of the mortgaged premises did not operate to vest the legal title to the land mortgaged, in the mortgagee.

What has preceded effectually removes from this case the principal ground upon which it is contended that by the acts of the parties the title to the lands in question was vested in McHenry at the time he made the trust deed. If appellant's contention in that regard rested wholly upon the record of the cancellation instrument, we should say that, standing alone, it does not affect the respondent. The record shows that the instrument was not properly witnessed, hence not properly of record, and not constructive notice to any person subsequently dealing with the title. But we have treated the matter, as did the trial court, as if there were circumstances established by the evidence sufficient to charge those under whom respondent claims with notice of the attempted cancellation.

The next question in order pertains to the trust deed. The trial court found that it was properly executed, but gave it a construction favorable to respondent. Appellant excepted to such construction, and respondent attacks the conclusion of the trial court that the existence of the trust deed was properly established. We are not bound on this appeal by the findings and conclusions unfavorable to respondent, but may properly review the whole case and affirm the judgment though errors be found, if, notwithstanding, the judgment be right on the pleadings and the evidence. So, assuming that the power of attorney was properly executed, and the trust deed as well, under such power, we will take up the subject of the effect of the trust deed where the trial court left it. The learned circuit judge found that by the trust deed the legal title to the premises in question was conveyed to Gabriel T. Long, in trust for Mildred Ann Slaughter, and subject to her control during coverture with George H. Slaughter; that it vested in Mildred Ann Slaughter the right to exercise such power of disposal through Gabriel T.

Long, the trustee, and that the execution of the three mortgages by the trustee, Mildred Ann Slaughter and George H. Slaughter uniting with him, constituted a valid conveyance of the whole title in fee, which ripened into an absolute title in fee in Calvin G. Williams by the sheriff's deeds on foreclosure. It follows necessarily, from what has been decided in regard to the state of the title at the time of the execution of the trust deed, that McHenry had a mortgage lien only, hence did not convey any greater interest to Long.

In the light of the foregoing the construction of the trust deed is not difficult. The conclusion we have reached in that regard renders it unnecessary to consider many questions that were argued in the briefs of counsel with much learning and supported by the results of commendable research.

The property covered by the trust deed was, mainly, mere personalty. The principal thing was a debt due from George H. Slaughter. Incident to such debt was a lien on the realty in question. The lien had no existence independent of the thing it secured. The property was vested in the trustee for the sole benefit of Mildred Ann Slaughter during coverture with George H. Slaughter, and subject to her control and disposal. Such control and disposal obviously were in aid of the beneficial use and enjoyment. The latter could not be realized to the extent clearly intended, considering the nature of the property, without using up the property itself, and the extinguishment of the lien would result as a necessary consequence. Now it is a familiar rule that in such cases the necessary result must be presumed to have been the intent of the parties to the instrument creating the trust, and their language is to be construed accordingly; and if there be language creating a trust over to another after the expiration of the first use, which cannot be construed so as to harmonize therewith, such words of limitation of the first use, to the extent of the necessary conflict,

must fail.   The rule was recognized by DANFORTH, J., in *Campbell v. Beaumont*, 91 N. Y. 464, by way of reference to several decisions which turned on its application, thus: "In all these cases it was, in effect, held that when property is expressly or by necessary implication to be spent by the primary legatee at his pleasure, a further limitation is clearly hostile to the nature of the gift."   The application made was that as to such use such *limitation* was void.

It follows from the foregoing that Mildred Ann Slaughter had the absolute right to finally dispose of all of the trust property in any way she saw fit.   She also had power to charge such property with her own or her husband's debts, so that a court of equity would enforce her contracts in that regard.   The execution of the mortgages by her and the trustee, presumably by her direction, shows unmistakably an intention to charge the property described in the mortgages with the payment of the debts mentioned in such mortgages.   *Heath v. Van Cott*, 9 Wis. 516.   She and the trustee were made parties to the foreclosure proceedings, and all questions in regard to the property interests actually covered by the mortgages, so far as they had power to incumber the same at least, were forever foreclosed by the judgment.

We have now proceeded further with this discussion than the case really required, because, inasmuch as the so-called trust deed only vested a mere lien upon the premises in the trustee, if it were true that the lien still exists and is owned by plaintiff, that constitutes no foundation whatever for this action of ejectment.

*By the Court.*— The judgment of the circuit court is affirmed.