## JACKSON, ex dem. Lansing, *vs.* CHAMBERLAIN.

A deed of the *survey fifty acres* in a military lot from the surveyor-general to a purchaser, is not within the purview of the acts of 1794, relative to *military bounty lands,* requiring deeds and conveyances concerning such lands to be *filed* and *deposited.*

Nor is it necessary that a deed from such purchaser to his vendee should have been *filed* or *deposited* to give it validity; nor that it should be *recorded* where such deed was executed *previous* to the recording acts.

Proof that one of two subscribing witnesses to a deed removed from the state 30 years before the trial, and that the other has not been heard from for 37 years, is accounting sufficiently for the absence of such witnesses; and on proof of the hand writing of one of the witnesses and of the grantor, the deed was read in evidence.

A purchaser of lands, at a sheriff's sale, under a judgment and execution, since the statutes requiring deeds to be recorded, will hold the same, although the defendant in the execution had, *previous to the judgment,* sold and conveyed the lands by deed, provided that the deed from the sheriff is recorded previous to the record of the deed from the debtor in the execution to his grantee, unless the purchaser at the sheriff's sale, at the time of his purchase, had notice of the previous deed. *The case of Jackson v. Post,* 9 Cowen, 120, commented on and explained.

THIS was an action of ejectment, tried at the Tompkins circuit in January, 1830, before the Hon. SAMUEL NELSON, then one of the circuit judges.

The action was brought for the recovery of the *survey fifty acres* in lot No. 93, Ulysses. The lessor of the plaintiff produced in evidence a deed of the premises in question from the surveyor-general *Richard Edwards*, bearing date the 20th July, 1792, duly acknowledged 22d August, 1829; and also produced a deed of the same premises from *Richard Edwards* to the lessor of the plaintiff, purporting to bear date 1st June, 1793, and to have been executed by the grantor, in the presence of *John Farnam* and *Jane Carlow*. The plaintiff proved that in 1793, Richard Edwards resided at Cherry-Valley, in the county of Otsego; that the witnesses to the deed resided in his family; that more than 30 years ago Farnam removed to Connecticut, and that for the last 10 or 12 years he had not been heard from. That soon after 1793 Richard Edwards removed from Cherry-Valley to Cooperstown, a distance of 14 miles, and Jane Carlow, who was a servant in his family, went with him. Shortly after his removal to Cooperstown Edwards died, and his widow returned to New-England, from whence she and her husband had emigrated into this state bringing with them John Farnam and Jane Carlow; whether Jane Carlow returned with Mrs. Edwards to New-England, the witness who was examined to account for the absence of the subscribing witnesses to the deed did not know; he (the witness) resided at Cherry-Valley in 1793, and lives there now; he lately had made repeated inquiries for Jane Carlow in Cherry-Valley, but not at Cooperstown; what had become of her, and whether she was living, or dead, he had not been able to learn. He proved the hand writing of *Farnam*, subscribed to the deed as a witness, and also the handwriting of *Edwards*, the grantor. Upon this evidence the judge permitted the deed to be read to the jury, although objected to by the defendant. The defendant produced in evidence a deed of the premises in question, from the sheriff of Tompkins to the defendant, *recorded* in the county of Tompkins, on the 23d September, 1819, made and executed under a sale by virtue of an execution issued on a judgment in favor of A. Burr, against *Richard Edwards*, docketed 7th January, 1802, and revived by *scire facias* against the heirs of Edwards and terre-tenants of the land, on the 3d November, 1813.

ALBANY,
Jan. 1832.

Jackson
v.
Chamberlain.

The defendant insisted that the plaintiff was not entitled to recover, because he (the defendant) was a *bona fide* purchaser under the judgment against Edwards, and because the deed from Edwards to the lessor had not been filed and deposited in pursuance of the acts of January and March, 1794, relative to lands in the military tract. A verdict was taken for the plaintiff, subject to the opinion of this court.

*Ben Johnson*, for the plaintiff. The deed to the lessor was properly received in evidence, the abscence of both witnesses being sufficiently accounted for, and the hand writing of one witness and of the grantor being proved; besides, the plaintiff was entitled to read it in evidence as an *ancient deed.* It was not necessary to the validity of the deed, that it should have been filed or deposited, not being within the purview of the acts relating to lands in the military tract. Those acts were passed in relation to *titles to lands* granted by the state as bounty lands to the officers and troops of this state, who served in the army of the United States, and affected only titles derived from such officers and soldiers, and not those derived immediately from the state or its authorized agent. Besides, at the renditon of the judgment under which the defendant claims, Edwards had *no interest in the land* upon which the judgment could attach as a *lien*, he having long before conveyed all his estate to the lessor of the plaintiff; and although the deed to the defendant was recorded, it vested no interest in him, as none could be conveyed by the sheriff. 4 Cowen, 599. 9 id. 120. 1 Wendell, 502.

*J. A. Collier*, for the defendant. The plaintiff failed in accounting for the absence of one of the witnesses; inquiries were made for her, but not at the place to which she was known to have removed; the deed, therefore, ought not to have been received in evidence; it could not be read as an *ancient deed*, as possession under it was not shewn, and no circumstance adduced authorizing its introduction without proof of its execution. But if it be considered as proved, not having been filed or deposited according to the requirements of the act, it was void; the act directs that all deeds thereto-

fore made and executed, of or concerning bounty lands grant- ALBANY,
ed by the state, shall be deposited, and no exception is made Dec. 1832.
as to survey fifty acre lots. Being avoided by the statute, it Jackson
is as if no deed had been executed ; and then there can be no v.
question as to the title of the defendant. Besides acquiring Chamberlain.
his title under a judgment against Edwards, the defendant was
a *bona fide* purchaser, and is entitled to protection. The deed
from Edwards to the lessor of the plaintiff not being recorded,
was void as against the defendant ; there was no possession un-
der it, and no circumstance to put the defendant on his guard.
The mere fact of a deed having been executed without the as-
sertion of a claim under it, cannot defeat the operation of a
judgment subsequently entered ; could it have such an effect,
a party would always have it in his power to render judgments
fruitless. It has always been the opinion of the profession that
in recording counties, a deed from the sheriff duly recorded,
takes preference of an unrecorded deed previously given by the
defendant in the judgment. It is said that the case of *Jack-
son, ex dem. Merrick* v. *Post*, 9 Cowen, 120, establishes a dif-
ferent doctrine ; but on examination, it will be found that the
court in that case recognizes the distinction taken by Judge
Spencer, in *Jackson* v. *Dubois*, 4 Johns. R. 216, that although
a judgment has not a preference over an unregistered mort-
gage, still, if the holder of such mortgage permit a sale under
a judgment to take place prior to the registry of his mortgage,
he loses his preference, and the purchaser at the sheriff's sale
holds the land. According to that principle, the deed of the
defendant having been duly recorded, and the deed of the les-
sor of the plaintiff not having been recorded, the plaintiff can-
not recover.

*By the Court*, SAVAGE, C. J. Both parties claim title
under Edwards. The important questions, therefore, are 1st,
whether the deed from Edwards to the lessor was sufficiently
proved ; and if so, 2d, whether the lessor acquired title under
it as against a subsequent *bona fide* purchaser.

The proof was sufficient ; the plaintiff shewed the absence
of one witness positively, and proved his hand writing, and
the hand writing of the grantor ; he also proved *prima facie*

the death or probable absence from the state of the other witness. Inquiry was made in the place of her former residence, and within 14 miles of her last known residence. This evidence would have been more satisfactory had inquiries been made in Cooperstown, the last place where the witness to the deed was heard of; but as her former acquaintances, only 14 miles distant, had not heard of her for 30 years, and as the family in which she lived had left the state many years ago, a reasonable presumption is raised of her death or absence This is enough where the other proof of the execution of the deed is as full as in this case. The evidence here, accounting for the second witness, is much stronger than it was in *Jackson* v. *Burton,* 11 Johns. R. 64. There the witness produced in court did not know the subscribing witness, nor had he made any inquiry for him. The witness in court had lived in New-York, where the deed was supposed to have been executed. The court held the testimony sufficient to let the proof go to the jury; the absence of the other witness being satisfactorily accounted for, and his hand writing proved. In that case it was remarked by Kent, Ch. J.: " The rules and practice of the courts leave this point with some latitude of discretion." And in *Jackson* v. *Cady,* 9 Cowen, 149, it is said that proof that the witness could not be found or heard of, upon diligent search and inquiry, would be evidence of his death or absence. I think enough was shewn in this case to prove the deed, especially as nothing was shewn on the other side contradicting the plaintiff's evidence.

I do not think the plaintiff was entitled to read the deed in evidence as an *ancient deed ;* there had been no possession under it, nor were there any circumstances shewn relating to the deed, except those concerning its execution. When the lot was first occupied does not appear ; probably not till recently, as the defendant acquired his title in 1819.

It was not necessary that the deed in question should have been *deposited* under the statutes of 1794. The principal, if not the only object of those statutes was the detection of frauds and forgeries. 20 Johns. R. 659. 6 Cowen, 146. 1 Wendell, 489. Edwards, the grantee from the surveyor-general, was not the soldier who merited the lot, nor the grantee of the sol-

dier, but the grantee of the state. The conveyances of the *survey fifty acres* sold by the surveyor-general, are not within the reason of the depositing acts, nor within the letter, as those parts of the lots can hardly be considered as granted " to the officers and troops of this state," for though nominally included in the patents to the soldier, they were liable to be sold for the expenses of surveying, and having been so sold, I apprehend were not within the mischiefs intended to be guarded against ; nor was the deed from Edwards to the lessor required to be deposited any more than the deed from the surveyor-general. At the date of this deed, June 1st, 1793, there was no law requiring a deed to be recorded to give it validity, and none of the recording acts have a retroactive operation. According to this view of the case, the title to the premises in question vested in the lessor at the date of the deed from Edwards to him ; of course a judgment subsequently obtained could create no lien upon this property. The judgment in favor of Burr against Edwards was docketed in 1802, and can have no possible effect upon property conveyed in due form of law, nine years before.

I agree with the defendant's counsel, that if the deed from Edwards to the lessor was void, the defendant shewed a good title under the judgment ; for Edwards having title from the surveyor-general, that title must remain in him until it is legally divested, and if it were in him when the judgment was docketed it passed to the defendant ; and even if the title had passed from him in a manner conclusive against him as in favor of his grantee, as by an unrecorded deed, where the statutes require a record to conclude subsequent incumbrancers or *bona fide* purchasers, still if such record be necessary as against such purchasers and incumbrancers, an unrecorded deed is unavailing against them ; so in this case, had it been necessary by statute, in 1793, that every deed should be recorded to give it efficacy against subsequent *bona fide* purchasers or incumbrancers, then, under the circumstances of this case, there would have existed an interest in Edwards, upon which Burr's judgment would have been a lien ; and though our statute does not save the rights of judgment creditors, and the judgment alone is unavailing as an incumbrance against an unre-

ALBANY,
Jan. 1832.

Jackson
v.
Chamberlain.

corded deed, yet when that judgment is enforced and a sale is made upon excution, and the sheriff's deed is first recorded, the purchaser becomes a *bona fide* purchaser, and in that character is entitled to the property in preference to the grantee in the unrecorded deed. Such is my understanding of the law and such is the current of authority, as I read the cases. In *Jackson* v. *Dubois*, 4 Johns. R. 216, the lessor was a purchaser under a judgment which was docketed intermediate the execution and the registry of the defendant's mortgage ; the plaintiff was non-suited, but it was conceded by the learned judge who delivered the opinion of the court, that had the lessor completed his title under the judgment, by having his deed perfected before the registry, he must have recovered. The language of the statute being, that no mortgage, nor any deed, conveyance or writing in the nature of a mortgage, shall defeat or prejudice the title or interest of any *bona fide* purchaser, unless the same shall have been duly registered. The case of *Jackson* v. *Terry*, 13 Johnson. R. 471, decides that a sheriff's deed must be recorded in the same manner as any other deed; and there a purchaser from the judgment debtor, subsequent to the sheriff's sale on the judgment, prevailed because the deed from the sheriff was not recorded. In *Jackson* v. *Town*, 4 Cowen, 599, the lessor of the plaintiff, the purchaser under the judgment, failed because no title was shewn in the judgment debtor, from whom the defendant purchased. The defendant's deed was before the judgment, but was not recorded. But the defendant in that case did not prevail upon the strength of that conveyance, but upon the fact that *the plaintiff failed to shew title in Eleanor Town, the judgment debtor.* It is true that in one part of the opinion in that case, Mr. Justice Woodworth seems to intimate that if it be admitted that Eleanor Town had seisin of the premises, then she parted with all her right and title, and the deed is valid, if not fraudulent and void against creditors and subsequent purchasers. He then undertakes to shew that there was no fraud, and after citing the cases in 4 Johns. R. and 13 id. and recognizing them as sound law, he distinguishes the case he was discussing from them by saying : " In each of those cases the defendant in the execution had an interest liable to be sold."

"In the present case *Eleanor Town had no title and the judgment was no lien.*" The only doubt I ever entertained as to that case was whether the defendant Lydia Town did not admit title in her mother, Eleanor Town, by taking from her a deed in fee, and whether she ought not to have been estopped from denying it; but that is unimportant here. The case of *Jackson* v. *Post*, 9 Cowen, 120, was commented on by the defendant's counsel, as containing doctrine hostile to his client's interests. The reporter states one point of the decision thus : " And therefore, when the debtor in the judgment conveyed his land before judgment obtained, though the deed was not recorded for several years after a sale under the judgment, and no notice of the first deed was given to a subsequent grantee, under the judgment, yet held that the judgment was no lien on the land, and that the conveyance by the judgment debtor was valid even as against a subsequent *bona fide* purchaser under the judgment." It is singular that such a proposition should have been stated when the facts of the case do not justify it. So far from the purchaser under the judgment being a *bona fide* purchaser without notice, the fact affirmatively appears that at the sheriff's sale he had notice of the prior deed to the lessor of the plaintiff, and such notice was communicated to each of his subsequent grantees, and to their grantees down to the defendant. The error, I presume, arose from the fact that no statement of the case was made by the reporter, and from a cursory examination of the opinion of the court, the facts were misapprehended. In that case Charles Merrick was the common source of title, (as Edwards is in this case.) The lessor's deed was executed in 1807, but not recorded till 1812. In 1808 a judgment was docketed against Charles Merrick, and the premises were sold by the sheriff and a deed executed by him, and recorded in 1809, under which the defendant claimed. But it was proved that before the sale by the sheriff, the purchaser (Ten Eyck) knew of the unrecorded deed of 1807, from C. Merrick to the lessor. The property passed through three persons before it came to the defendant, each of whom, including the defendant, had notice of the prior deed to the lessor ; and all the conveyances subsequent to the sheriff's deed to Ten Eyck were after

the recording of the lessor's deed.    The jury, under the charge
of the judge, found a verdict for the defendant, which this
court set aside.  Mr. Justice Sutherland delivered the opinion of
the court, and recognizes the cases of *Jackson* v. *Dubois* and
*Jackson* v. *Terry*.   It is true, that in commenting on the re-
marks of Mr. Justice Woodworth, in the case of *Jackson* v.
*Town*, he seems to understand Judge Woodworth as assuming
one ground why Mrs. Town had no property in the premises
upon which the judgment could be  a lien, to be, *that she had
previously conveyed it to her daughter, the defendant;* but I do
not so understand the case of *Jackson* v. *Town*, nor the remarks
of the judge who gave the opinion.   Eleanor town had no title
in the premises in dispute, because none were shewn in her
except a possession for some years, which she had abandoned
some time before the conveyance ; and it was held that her
possession, to be operative, should appear to have been at least
for 20 years, so as to ripen into a title.   I do not understand
the doctrine of that case  to be, that E. Town had no  title be-
cause having once had title she had conveyed it away beyond
the reach of a judgment creditor ; if that could be done with-
out recording the deed, the statute would be  a dead letter.
Supposing her once to have had title, which she conveyed to
L. Town by deed  not recorded, there is no doubt that, as be-
tween the parties to that deed, E. T. had  parted with all her
interest ; and  there can be as little doubt that if she had con-
veyed subsequently to  the lessor, and his deed had  been first
recorded, that his title would  have prevailed. If so, there was
after the first deed an interest remaining, which, as regards the
subsequent purchaser, was  the subject of a sale and convey -
ance by deed.   It is admitted on all hands that a mediate con-
veyance by means of a judgment and sheriff's sale, is equally
within the protection of the statute, as  a conveyance immedi-
ately from  E. T. to L. T.   The judgment, therefore, becomes
a lien upon the same interest, which is conveyed by the second
deed.   The judgment and sheriff's sale and  conveyance are
but a species of assurance, and  any interest in lands may be
thus conveyed, which  may be transferred by feoffment.   Such
is my understanding of the adjudged cases  and  of the law.
     In this case, however, I place the plaintiff's right to recover

upon the ground that it was unnecessary to deposit either the deed from the surveyor-general to Edwards, or the deed from Edwards to the lessor, and that at the date of those deeds, recording was not required. The lessor, therefore, had the whole title in 1793, and is entitled to judgment.