EHLE VS. BROWN and others, impleaded, etc.

RECORDING ACT. (1–4) *Applicable to judicial sales. When purchaser at foreclosure sale, or his grantees, protected.*

EVIDENCE — SHERIFF'S DEED. (5–8) *Sheriff's deed as* prima facie *proof of title.*

BILL OF EXCEPTIONS. (9) *Presumption, when it does not purport to contain all the evidence.*

1. The provisions of the recording act (R. S., ch. 86, sec. 25) are applicable in favor of titles made through *judicial* sales and conveyances.

2. Thus, where a mortgage is foreclosed as against all persons having any title or interest *of record,* and the land sold, and the sheriff's deed duly recorded, a prior unrecorded deed from the last grantee of record to one not made a party to the foreclosure, is void as against the grantee in the sheriff's deed, if he took without actual or constructive notice of such unrecorded deed, and for a valuable consideration.

3. If the mortgaged premises were occupied by a tenant at the time of the sale, this was *perhaps* sufficient to put the purchaser on inquiry, and charge him with notice of the rights of the grantee in such unrecorded deed.

4. But if the purchaser at the foreclosure sale took possession, one who afterwards purchased of him in good faith, for value, before record of the adverse deed, is protected.

5. Under ch. 40, Laws of 1869, the sheriff's deed of land is *prima facie* evidence "that the title of the person or persons against whom the judgment was rendered, and by virtue of which the sale and deed purport to have been made * * * passed to and vested in the grantee or grantees in such deed," without other proof being made of the judgment or sale.

6. So much of said chapter as declares its provisions applicable to sheriff's deeds *previously* executed, is valid.

7. Where, on the trial of an action involving the title to land, a party produces what purports to be a sheriff's deed to him, and to have been issued upon a sale pursuant to a judgment in an action therein recited, this is *prima facie* proof that there was a valid judgment in such action, and a valid sale pursuant thereto, and that the conveyance upon such sale was executed by the proper officer.

8. The court below found that the defendant H "received what purported to be a deed of the premises in dispute, from X, purporting to be sheriff of Y county, dated, etc., which deed purported to be given in pursuance of a sale upon a judgment in an action in the circuit court for Y county, for the foreclosure of a mortgage [describing it], which judgment was recited to have been given July 11, 1860, in a certain action [describing it], and which sale was recited to have been made August 21, 1861, to W, and the certificate thereof afterwards assigned to H." *Held*, that this is equivalent to a finding that there was a valid judgment in the foreclosure action recited in the deed, and a valid sale and conveyance of the premises — nothing to the contrary appearing in the record.

9. Where the bill of exceptions does not purport to contain all the evidence, it must be presumed that the findings of fact were sustained by the evidence.

APPEAL from the Circuit Court for *Fond du Lac* County.

Action to redeem from a mortgage sale, brought by *Mary M. Ehle* (wife of Nicholas Ehle) against Hawkins, the grantee in the sheriff's deed, and *Brown, Gillett, Simmons* and *Charles*, purchasers under Hawkins. The facts found by the circuit court will appear from the opinion. The defendants, excepting Hawkins, appealed from a judgment in favor of the plaintiff.

*A. M. Blair*, for appellants, contended that the sheriff's deed was evidence of title under the judgment of foreclosure, without proving the judgment (Laws of 1869, ch. 40); and that the defendants were protected as *bona fide* purchasers, without notice of plaintiff's unrecorded deed, the recording act applying to sheriff's deeds as well as to any other. *Jackson v. Chamberlain*, 8 Wend., 620; *Hall v. Nelson*, 23 Barb., 88; *Hodson v. Treat*, 7 Wis., 263.

*E. S. Bragg*, for respondent:

1. Admitting, for the purpose of the argument, that there was a foreclosure, and that a *lis pendens* was filed, and a sale made and confirmed, and deed given thereon, still such sale operated only as an assignment of the mortgage, because the owner of the equity of redemption was not before the court nor affected by its judgment. *Stark v. Brown*, 12 Wis., 572; *Moore v. Cord*, 14 id., 213; *State Bank v. Abbott*, 20 id., 570. No person is bound by the decree except parties to the action and their privies, or persons purchasing *pendente lite;* and an equity of redemption not before the court is not barred even though parties have no notice of it. *Haines v. Beach*, 3 Johns. Ch., 459; *Hodson v. Treat*, 7 Wis., 263. Ch. 147, Laws of 1867, has modified the rule in this respect; but it was not in force at the date of these alleged proceedings. The passage of this act is a legislative construction of the statutes as they existed prior to it.

2. The recording act (sec. 25, ch. 86, R. S.) is not applicable to this case. (1.) The effects of a deed on foreclosure are declared by the statute to be "as if executed by the mortgagor or mortgagee to the same person, and shall constitute a bar," etc. Laws of 1859, ch. 195, sec. 3. That is, as a conveyance, a grant, it shall be equivalent to the deed of the mortgagor or mortgagee, and no more. But if the mortgagor and mortgagee, at the date of the sheriff's deed, had united in a conveyance to the defendants, and that conveyance had been recorded, such deed would not have been within the protection of the statute, because the owner of the fee had conveyed to the Wisconsin Paint Company, and that deed was of record; so that the mortgagor had no interest to convey, and defendants had notice of that fact, and the mortgagee only had his mortgage interest. (2.) The recording act relates to conveyances from the same grantor and no other. *Rayner v. Wilson*, 6 Hill, 469; *Tyler v. Hammond*, 11 Pick., 193; *Bates v. Norcross*, 14 id., 224; *Wood v. Colvin*, 2 Hill, 566.

3. The proof shows a tenant in possession at the date of defendant's first deed. This was notice of plaintiff's rights. The

occupancy of realty is presumed to be in subordination to the legal title. *Harvey v. Tyler*, 2 Wall., 328. 4. The so called sheriff's deed was no evidence of a valid judgment and sale, even under ch. 40, Laws of 1869. (1.) The rights of parties were fixed at the time of giving of the deed, and subsequent legislation could not vary them. Hence the act should be held inoperative as to sales and deeds made before its passage. (2.) The recitals in a deed bind only parties and their privies in blood or estate. Hence the recitals in a sheriff's deed can only be held to apply *to parties in the suit*, who are cognizant of the proceedings and able to show the defects therein, if any, *and to their privies;* and the act should be construed as so intending. (3.) The party relying upon such a deed should be held to show that, at the date of his deed, the person whose name purports to be signed to the deed *was in fact such officer as the deed recites.*

The following opinion was filed at the January term, 1872.

LYON, J. The plaintiff claims to be the owner of the equity of redemption in a certain lot described in the complaint, and has brought this action to enforce her alleged right to redeem the same from an outstanding mortgage thereon, and for an accounting.

The case is fully stated and explained by the circuit court in the findings of fact, which, together with the conclusions of law therefrom, as found by such court, are as follows:

"The court find the following facts from the evidence:

"1. That the parties claim from a common source of title, Harriet and Elijah Rouse; that they, being seized of the premises described in the complaint, on the 23d day of April, 1859, mortgaged the same to one Thos. E. Wallace, by mortgage bearing date on that day, for $400, due in one year, with twelve per cent. interest, which mortgage was recorded on the day of the date thereof, in the office of the register of deeds in Fond du Lac county.

"2. That Harriet and Elijah Rouse sold and conveyed the

said premises, subject to the mortgage of Thos. E. Wallace, to 'The Wisconsin Paint Company,' by warranty deed, dated July 15, 1859, and recorded the same day in the office of the register of deeds in said county; and that 'The Wisconsin Paint Company' sold and conveyed the premises by quitclaim deed, dated February 29, 1860, and recorded in the office of the register of deeds aforesaid, on the 8th day of October, 1870.

" 3. That the defendant Hawkins received what purported to be a deed of said premises, from George F. Wheeler, purporting to be sheriff of Fond du Lac county, dated September 9, 1861, and duly recorded the same day; which deed purported to be given in pursuance of a sale upon a judgment in an action in the circuit court for Fond du Lac county, for the foreclosure of the mortgage given to Wallace hereinbefore stated, which judgment was recited to have been given July 11, 1860, in an action wherein Thos. E. Wallace was plaintiff and Elijah Rouse, Harriet Rouse, 'The Wisconsin Paint Company,' and Nicholas Ehle were the defendants; which sale was recited to have been made August 21, 1860, to Thos. E. Wallace, and the certificate thereof afterwards assigned to Hawkins; that Hawkins swore that he took the assignment of the certificate of sale from the sheriff, June 7th, 1861.

" 4. That Hawkins paid for such certificate $400, went into possession of said premises under his deed at the date thereof, and so continued until November 28, 1865, when he conveyed to the defendant *Harvey P. Brown*, for value, who recorded his deed at the same date, and entered into possession claiming to hold under the same, and so continued until September 5th, 1866, when he sold and conveyed to the defendant *Gillett*, who, at the date thereof, recorded his deed, entered into possession under the same, and so continued until September 15, 1868, when he conveyed to defendant *Simmons*, for value, who thereupon entered into possession, and so continued until January 19, 1870, when he sold and conveyed to the defendant *Charles*, for value, who entered into the possession and so still continues;

and that each of said defendants entered and claimed to own under the title so claimed by said Hawkins as aforesaid.

" 5. That at the dates, recited in the deed to Hawkins, of the alleged foreclosure and sale, the premises were occupied by one Hyde. That Hawkins testified that he moved Hyde into the house with his own team, and that Hyde remained in the house all the time until after he, Hawkins, took the sheriff's deed; that Hyde moved out soon after he, Hawkins, got the sheriff's deed; that he did not know by what right Hyde was in the house, nor whose tenant he was. That Nicholas Ehle testified that he was the husband of the plaintiff, and that, as her agent, he directed the property to be leased in 1860, after the deed from the 'Wisconsin Paint Company' to the plaintiff; that he did not know the name of the tenant; that he directed it to be leased by Mr. Francis; that he did not know that Francis leased it for the plaintiff; that he knew it was occupied at one time after the deed, but did not know by whom."

" 6. That the deed to the plaintiff was given at the request of her husband, Nicholas Ehle, without consideration from her — she being at the date of said deed, and still continuing to be, the wife of said Nicholas, and they both being residents of Kenosha, Wisconsin.

" 7. That the plaintiff had no notice of any foreclosure of the Wallace mortgage, neither had either of the defendants any knowledge of the plaintiff's deed, except, such as they might acquire from the tenancy aforesaid.

" 8. That notice of the pendency of this action in due form was duly filed at the commencement of this suit."

" And as conclusion of law the court finds,

" 1. That the plaintiff is entitled to redeem from the said Wallace mortgage.

" 2. That she is entitled to an account for the rents and profits of said premises which have been possessed or received by the defendants, and each and every of them, or which without willful default or neglect might have been received.

"3. That upon payment of whatever may remain due upon said mortgage, as found on such accounting, the plaintiff is entitled to the possession of said premises, and a release of all claim thereto from the defendants.

"4. That, in case of an excess of rents and profits, after paying said mortgage and interest, the plaintiff is entitled to a judgment for the amount of said excess against the defendant or defendants properly chargeable with the payment of the same.

"5. And that the question of costs be reserved."

The defendants duly excepted to several of the findings of fact, and to each conclusion of law. Judgment was entered in accordance with the conclusions of law, for the plaintiff; from which all of the defendants except Hawkins have appealed to this court.

The bill of exceptions does not purport to contain all of the evidence given upon the trial, and their exceptions to the findings of fact are, therefore, unavailable to the defendants. In such case we must presume that the evidence was sufficient to prove the facts found by the circuit court. This has been so frequently and so uniformly held by this and other courts, that no reference to the adjudged cases is necessary. The judgment being in accordance with the pleadings and the conclusions of law, the controlling question to be determined is, Are the conclusions of law sustained by the facts found by the circuit court?

I. The defendants claim the lot in controversy under and through a sheriff's deed, or what purports to be a sheriff's deed, executed to the defendant Hawkins on an alleged sale of such lot pursuant to a judgment of the circuit court for Fond du Lac county, in an action to foreclose the Wallace mortgage from which the plaintiff seeks to redeem. In this case the court finds the existence of such sheriff's deed, and states some of the recitals therein contained, but does not expressly find that any of the proceedings therein recited were ever had, or that the person executing such deed was in fact sheriff. It is insisted by the counsel for the plaintiff, that the findings of

fact fail entirely to show that there was any valid foreclosure of the mortgage or sale of the lot. But we think otherwise. By the provisions of ch. 40, Laws of 1869, sec. 1, the sheriff's deed is made *prima facie* evidence "that the title of the person or persons against whom the judgment was rendered, and by virtue of which the sale and deed purport to have been made, * * * in the lands and real estate described in such deed, passed to and vested in the grantee or grantees in such deed;" and this without making other proof either of the judgment or sale than that furnished by the deed. Sec. 2 provides that a duly certified copy of the record of such deed shall have the same force and effect as evidence, as the original. Sec. 3 is as follows: "The provisions of this act shall apply to deeds heretofore executed and recorded, as well as to those hereafter executed and recorded." (Tay. Stats., ch. 137, §§ 123 to 125 inclusive.)

The alleged sheriff's deed to Hawkins was executed long before the enactment of the above statute, although this action was commenced after the same was enacted, and it is contended that the legislature had no power to give a retroactive effect to that law by making the same applicable to conveyances theretofore executed. The law affects no vested rights, and certainly does not impair the obligation of any contracts. It merely establishes a rule of evidence by prescribing what shall be the effect of the deed when read in evidence on the trial. It does not preclude the party claiming adversely to the deed from showing that there is no valid judgment or sale to support it, but simply changes the burden of proof to such party, and makes it incumbent upon him in the first instance to produce the record of the preliminary proceedings. We perceive no valid constitutional objection to the law. We think that a fair construction of the law of 1869 requires us to hold that when the defendants read the sheriff's deed, or rather a certified copy of the record thereof, on the trial, they thereby proved, *prima facie*, that there was a valid judgment in the foreclosure action,

and that there had been a valid sale of the lot pursuant thereto, and that the conveyance upon such sale was executed by the proper officer. It follows from this view of the law, that the finding of the circuit court in respect to the sheriff's deed is equivalent to a finding that there was a valid judgment in the foreclosure action, and a valid sale and conveyance of the lot in controversy pursuant thereto, nothing appearing to the contrary in the record.

II. There being a valid sale and conveyance of the lot to Hawkins pursuant to the judgment in the action to foreclose the Wallace mortgage, the effect of such conveyance was to vest in Hawkins the same estate which he would have taken had Harriet and Elijah Rouse, the mortgagors, and Wallace, the mortgagee, together with the Wisconsin Paint Company and Nicholas Ehle, joined in the conveyance of the lot to him. Laws of 1859, ch. 195, sec. 3; *Tallman v. Ely*, 6 Wis., 244. It is perhaps a fair inference from the findings, that Hawkins, when he purchased the certificate of sale, is chargeable with constructive notice that the plaintiff was then the owner of the equity of redemption. There was then a tenant on the lot, whose occupancy, nothing appearing to the contrary, must be presumed to have been subordinate to the legal title, and the fact that the lot was so occupied was probably sufficient to put Hawkins upon inquiry, and to charge him with constructive notice that the plaintiff held the legal title, although her conveyance had not been recorded.

If this be so (and such is the most favorable view for the plaintiff), then Hawkins only took an assignment of the Wallace mortgage, by the sheriff's deed, and there still remained an outstanding equity of redemption in the plaintiff, because she was not a party to the foreclosure action. In such case, as against Hawkins, there can be no doubt of the right of the plaintiff to maintain this action. *Tallman v. Ely, supra; Stark v. Brown*, 12 Wis., 572.

III. But Hawkins took possession of the lot, removing the

tenant therefrom, and all of the other defendants were successive purchasers thereof for value and in good faith, holding the same under conveyances duly recorded, and without any notice, either actual or constructive, of the plaintiff's interest therein. When each of these appellants bought and paid for the lot and took a conveyance thereof, his or her immediate grantor was in the actual and exclusive possession, and the records in the office of the proper register of deeds showed that he or she had a perfect title thereto by an uninterrupted line of conveyances from the original source of title, or by proceedings which we have seen were equivalent thereto. Such are substantially the findings of the circuit court. Under these circumstances we see no good reason why the appellants are not protected by the recording act. R. S., ch. 86, sec. 25. It must be that each of them is "a subsequent purchaser in good faith and for a valuable consideration of the same real estate," and that the conveyance of each was duly recorded before that under which the plaintiff claims. We see no escape from the conclusion, that by reason of her neglect to place her conveyance from the Paint Company on record in due time, the plaintiff has lost her right to redeem as against the appellants. *Hoyt v. Jones, ante,* p. 389; *Hoppin v. Doty,* 22 Wis., 621; *Hodson v. Treat,* 7 id., 263; *Jackson v. Chamberlain,* 8 Wend., 620.

The judgment against the appellants must be reversed, and the cause remanded with directions to the circuit court to dismiss the complaint as to them.

*By the Court.*— So ordered.

The respondent moved for a rehearing; and this motion was denied, and the following opinion filed, at the June term, 1872.

Dixon, C. J. The learned counsel for the plaintiff argues for a rehearing, stating his points, as usual, with great clearness and brevity.

In the action to foreclose the Wallace mortgage, all persons having any title or interest of record in the mortgaged premises

subsequent and subject to the mortgage, were made parties de-
fendant, and their rights and claims barred and foreclosed.   The
plaintiff then had such title subsequent and subject to the mort-
gage, but the same was *not of record*, and she was not made a party
to the action.   She owned the equity of redemption by deed exe-
cuted and delivered February 29th, 1860, but not recorded until
the 8th day of October, 1870.   The mortgage was foreclosed, and
Hawkins acquired title by sheriff's deed on the foreclosure sale,
in 1861, which deed was immediately recorded.   Hawkins con-
veyed to *Brown, Brown* to *Gillett, Gillett* to *Simmons*, and *Simmons*
to *Charles*, the present owner under that line of conveyances, and
all these conveyances were recorded before the recording of the
deed to the plaintiff.   All the persons so purchasing, from
Hawkins to *Charles* inclusive, bought in good faith, for value,
and entered into and held possession without notice of the plain-
tiff's deed.

The court notes the distinction made by counsel between a
grant and a bar or an estoppel, as to the manner in which each
operates upon or affects title.   Undoubtedly, as a grant, the
sheriff's deed did not convey to Hawkins the title of the plain-
tiff, *Mrs. Ehle*, for the plain reason given by counsel, that *Mrs.
Ehle* was not a party to the foreclosure action, and so her title
could not be directly touched or affected by it.   Treated merely
as a grant, the position of counsel is incontrovertible, that nei-
ther Hawkins nor any of the other defendants, purchasers un-
der him, acquired the equity of redemption in the mortgaged
premises by virtue of the sheriff's deed alone.

But it is not alone as a grant or an actual and valid transfer
of the title by the foreclosure sale merely, that the operation of
the sheriff's deed and the rights and title of purchasers under it
are to be tested.   The doctrine of estoppel against the plaintiff
being permitted to assert her title because of her omission to
record her deed, and also the principle of bar or avoidance of
her title under the registry law, had both intervened and
become applicable in favor of subsequent purchasers in good

faith and for a valuable consideration, when she afterwards recorded her deed, and when this suit was commenced. Such subsequent purchasers, some or all of them, I think all, had recorded their deeds before that of the plaintiff was recorded. On the question thus presented, the discussion in the opinion on the motion for a rehearing in *Hoyt v. Jones*, just decided, will be found very pertinent, and perhaps enough upon the subject.

The learned counsel does not controvert the general proposition that the provisions of the registry law are applicable to, or in favor of, titles made through judicial sales and conveyances. This point I understand to be well settled. It is stated in the note, and understood to have been a position agreed to by this court, in *Hodson v. Treat*, 7 Wis., 263, that "a *bona fide* purchaser at a foreclosure sale, without notice, has preference to the grantee of the mortgagor's equity of redemption, whose deed is unrecorded." The proposition, as stated, is in some respects inaccurate, but it shows that the court looked upon such conveyances as being within the operation of the registry law.

In *Jackson v. Chamberlain*, 8 Wend., 625, 626, which counsel concedes to be very high authority, Chief Justice SAVAGE says: " And though our statute does not save the rights of judgment creditors, and the judgment alone is unavailing as an incumbrance against an unrecorded deed, yet when that judgment is enforced, and a sale is made upon execution, and the sheriff's deed is first recorded, the purchaser becomes a *bona fide* purchaser, and in that character is entitled to the property in preference to grantee in the unrecorded deed. Such is my understanding of the law, and such is the current of authority as I read the cases."

Decisions to the same effect, and some giving even greater rights to judgment creditors, might be cited in numbers; and counsel refers to none to the contrary.

*Den v. Richman*, 1 Green (N. J.), 43, cited by counsel, holds the same view. The chief justice, delivering the opinion of the court, there says: " Matthias Richman, the defendant in

this action, is a purchaser of the premises in question. He who buys at sheriff's sale, pays the consideration money and procures a deed, is fully and literally entitled to this character and description. He is so called in the act making lands liable to be sold for the payment of debts, and while he is within the terms of the act for the recording of deeds, he is, as much as any other purchaser for a valuable consideration, within the reason of the safety and protection those acts were designed to afford." And in the same case Mr. Justice DRAKE, speaking of the recording act, also says: " But this is an act for the prevention of frauds, and should be liberally construed. There is no well founded distinction between purchasers at sheriff's sale and purchasers at private sale. The term purchaser is equally applicable to both, and good policy requires that the former should be protected as well as the latter. And the objection as to *seisin* is equally strong against a private sale, as against a sale by virtue of an execution ; for if, by reason of the first deed, there was no estate left in the defendant for the purposes of the levy, there could be none to be transferred by the private conveyance."

And the other authority cited by counsel on this argument, *Harlan's Heirs v. Seaton's Heirs*, 18 B. Monroe, 312, merely holds that the provisions of the recording acts of Kentucky do not extend to conveyances made by heirs or devisees so as to protect purchasers from them against the title under a prior unrecorded deed made by the intestate or testator in his lifetime. The point was so ruled in that case on the authority of previous decisions in the same court, and upon the doctrine of *stare decisis*, but with a strong protest against its correctness. The court say : " If this question was one of first impression, and had not been heretofore decided by this court, we would be strongly inclined to give to the statute a liberal construction, and make it apply as well to the purchasers from the heirs of the grantor of an unrecorded deed, as to purchasers from the grantor himself. The mischief is the same in both cases. The heirs

at law are as much the apparent owners of the land as the grantor was in his lifetime, and the protection of innocent purchasers being the evident object of the statute, it would seem to be just and reasonable, and not only consistent with but promotive of the legislative intention, to give it such a construction as would make it operate as a remedy to the whole evil which it was intended to guard against." The construction which the court thus say ought to be given to the statute, is the same which has been given to precisely similar statutes under like circumstances by the courts of other states. *Kennedy v. Northrop*, 15 Ill., 148, and *McClure v. Tallman*, 30 Iowa, 515, and cases cited.

There can be no doubt, we think, of the correctness of the position thus generally assumed by the authorities, that the statute is to be fairly and liberally construed so as to prevent and obviate the mischiefs and abuses which it was the design of the legislature to remedy. The statute was made to prevent those who once had title to land from making successive sales, and thereby defrauding one or more of the purchasers, which, at common law and without the statute, might be done; and, as a means of accomplishing that object, to protect innocent purchasers, buying and paying their money on the credit of the recorded title, who should themselves testify their appreciation of and proper regard for the rights of others by complying with the condition or requirement of the statute in causing their own deeds to be duly recorded. Such is the object, and such is the justice and policy of the law, for the protection of innocent purchasers who have acquired the ostensible title exhibited and shown by the record. For their protection and safety, prior unrecorded conveyances and titles must yield and must be invalidated. In view of this object and of this policy, and of the manifest justice of the ends to be attained, it would require very urgent considerations indeed to induce us to put a construction upon our registry law, against its letter, which would enable a purchaser to keep his deed in his own custody and unrecorded

for years, and suffer the title of record of his grantor and the possession of the land to pass into the hands of one innocent purchaser for value, whose deed should be first recorded, or, as in this case, into and through the hands of several such purchasers in succession, and yet, after all this had been done, then to record his deed, and assert and maintain his paramount title, and uproot and destroy that of one or all of such innocent purchasers.

But counsel here, admitting the protection afforded to purchasers at judicial sales in some cases, insists that this is not one of them. He says that the foreclosure judgment in question was *in rem*, and not *in personam* against the party then apparently the owner of the land or in whom the record title then was. Rouse, the mortgagor, had conveyed to the Wisconsin Paint Company, whose deed was recorded. The Wisconsin Paint Company was the owner of record, and was party defendant to the action. The right of personal judgment over was against Rouse, but not against either of the defendants. Counsel argues that there must be judgment *in personam* against the apparent owner by the record, or the right to such a judgment, in order to produce a title, or effect a sale and purchase which will be protected by the recording act. Counsel says: "If the title had remained in the mortgagor upon the record, the court would be clearly right; but the mortgagor had sold, and the deed was recorded before the commencement of foreclosure. The holder of the mortgage had no claim against the recorded grantee of the mortgagor, and could recover no affirmative judgment against him." We cannot assent to these views of counsel, or think that the circumstances alluded to should have the slightest influence upon the title of the purchaser at the foreclosure sale whose deed was first duly recorded.

The decisions of this court referred to and questions put by counsel, respecting the effect of judgments of foreclosure and sale in certain cases or under certain circumstances, are easily distinguished when we recollect that no question under

the registry law was or is involved in them. Independently of the registry law and its operation upon titles, and which was not at all involved in the cases, those decisions are clearly not in conflict with the present. Omitting the registry law and any effect which it might possibly have, and we could probably answer the questions of counsel as he would have us do.

The point that the subsequent purchaser, who would avoid the title under a prior unrecorded deed according to the provisions of the recording act, must himself have purchased and received conveyance from the same grantor who executed the prior unrecorded deed, has been overruled and denied in the recent decision in *Fallass v. Pierce*, 30 Wis., 443.

*By the Court.*— Motion for rehearing denied.