DETERMINED IN THE

# FOURTH DEPARTMENT

AT

# GENERAL TERM,

## January, 1876.

---

## JOSEPH HETZELL, PLAINTIFF, *v.* WILLIAM C. BARBER, DEFENDANT.

*Devise of real estate — power of sale — conveyance by beneficiary — chap.* 482, *of* 1871 *— power of surrogate over testamentary trustees — mortgage — tender.*

A testatrix by her will devised an undivided two-thirds of certain real estate to her two daughters, absolutely, appointing her husband executor, and authorizing him to sell and convey the same, and invest the proceeds for the benefit of her daughters, to be paid to them, with any accumulations thereon, as they respectively arrived at the age of twenty-five years. The plaintiff brought this action to recover the premises, claiming under a deed from the executor, made in execution of the power. The defendant claimed under a prior deed, executed to him by the two daughters. *Held,* that the legal estate passed to the plaintiff by the conveyance from the grantee of the power, and that the conveyance by the daughters merely operated to substitute the defendant in their place as the beneficiary under the power.

The testatrix devised the other undivided third of the land above mentioned to her husband, and appointed him executor. February 21, 1869, he sold his interest to the plaintiff, the deed not being recorded until December 27, 1871. May 11, 1869, a judgment was recovered against the husband, and his interest therein was, on January 14, 1870, sold by the sheriff to Pingree, who, on the twenty-eighth of January, assigned the certificate of sale to the defendant, the assignment being recorded April 17, 1871. *Held,* that the conveyance by the sheriff was, in legal effect, equivalent to a conveyance by the husband himself, and that the title of the grantee thereunder was superior to that of the plaintiff claiming under the unrecorded deed.

Prior to the passage of chapter 482, of 1871, surrogates had no power to remove a testamentary trustee or grantee of a power.

Where no notice of the assignment of a mortgage has been given to the mortgagor, a tender to him of the amount due on the mortgage extinguishes the lien of the mortgage as effectually as payment thereof.

Motion for a new trial on exceptions, ordered to be heard in the first instance at the General Term, after a verdict directed by the court.

This was an action of ejectment for the recovery of the possession of real property, lying in the city of Auburn, Cayuga county, both parties claiming title from the same source, to wit, through Louisa Easterly, deceased, who died seized of the premises, at Auburn, April 10, 1866, leaving her last will and testament, together with her codicil thereto appended in due form, the material portions of which were as follows :

" Third. As for the said Dennis place (the premises in question), lying south of and adjoining the foregoing, consisting of about four acres of land, fronting on William street, I hereby give, grant and devise the same in equal parts to my said husband, John M. Easterly, and my two daughters, Emma F. and Anna L. Easterly, share and share alike ; to whom, also, in the said equal proportions, I give and bequeath all my personal property of every kind and description.

" Fourth. I nominate and appoint my said husband, John M. Easterly, sole executor of this, my last will and testament, and testamentary guardian of my said children, hereby authorizing and empowering him, at and after my decease, to sell and convey (both as owner and executor), by his deed, the whole or any part or parts of the said Dennis place above described, to any person or persons, and thereby giving good and sufficient title to the same; and I hereby order and direct my said executor, in case he makes such sale, to invest the portion of the proceeds going to my daughters in some good securities, and keep the same invested for them until after they severally become of the age of twenty-five years, when the same is to be paid to them, with any accrued accumulation of interest, the same to be the separate property of each of them respectively, and to be held free from the control or directions of their husbands, or of any other person."

The will and codicil were duly admitted to probate before the surrogate of Cayuga county, February 23, 1867, and letters testamentary duly granted to John M. Easterly, as sole executor, the same day, who accepted the trust, and entered upon the full discharge of the duties pertaining thereto.

The trustee caused the entire premises to be surveyed, plotted and laid off into twenty-five different divisions for building purposes, and a map of the same to be made and filed in the Cayuga county clerk's office, as early as February 6, 1868, showing the exact boundaries of each lot.

February 20, 1869, John M. Easterly sold and conveyed his individual interest in the premises in question, to the plaintiff, for the consideration of $4,000, which deed was not recorded till December 27, 1871. At the time of the excution and delivery of this deed to plaintiff, there were no judgment liens existing upon the premises. Subsequently, and May 11, 1869, The Cayuga County National Bank obtained, and caused to be docketed, a judgment against the said Easterly for $1,117.42. January 14, 1870, the sheriff of Cayuga county, to satisfy this judgment, sold such interest as he had in the premises at the time the judgment was docketed to John T. Pingree. Subsequently, January 28, 1870, Pingree assigned his certificate of sale to defendant, the assignment not being recorded till April 17, 1871.

April 27, 1870, the trustee sold and conveyed, under the terms of the will, as executor, etc., what purported by the terms of the conveyance to be the entire fee in the lands in question to plaintiff; no mention was made in this deed of the former conveyance to plaintiff, of the undivided one-third, February 20, 1869, nor was there a reservation as to that one-third, which plaintiff already owned under his unrecorded deed, though in the second or last deed the consideration was raised to $16,000, which covered the $4,000 consideration expressed in the former deed. This deed, from the executor and trustee to plaintiff, in terms conveying the entire premises, was duly recorded June 4, 1870. Prior to this, and February 8, 1870, the defendant obtained from the *cestui que trusts*, Anna L. Easterly and Emma F. Bainbridge (formerly Emma F. Easterly), the two daughters, a warranty deed, purporting to convey an undivided two-thirds of the premises in question. At the time of this

negotiation, and the alleged conveyance by the *cestui que trusts*, they had not attained to the age of twenty-five years.

The defendant on the trial read in evidence a mortgage on the premises in question, executed by Louisa Rathbun (who was the grantor of Mrs. Easterly) to Anna Storm, dated and recorded in 1854, and assignments of the same to the defendant.

The plaintiff gave evidence, in reply, for the purpose of showing a tender of the amount due thereon to one Briggs, the defendant's assignor.

*Whitney & Lamoree*, for the plaintiff.   The deed from the *cestui que trusts* to the defendant was no more than a deed of subrogation ; he, at most, was only stepping into their shoes, and taking the land as they held it, to wit, subject to the execution of the power, and he is entitled to no more than the avails after an execution of the power.   (*Reed* v. *Underhill*, 12 Barb., 113 ; 4 Kent's Com., 355 ; *Joseph Hetzell* v. *Owen M. Easterly*, Fourth Dep., Jan. Term, 1873, not reported ; *Downing* v. *Marshall*, 23 N. Y., 379, 380.)   The daughters could convey no more than such title as they possessed, and could by no act of their own, defeat the power vested in the trustee, and that which they cannot do their alienee cannot do for them.   (5 Mass., 242 ; *Willis* v. *Sherral*, 1 Atk., 479 ; 4 Kent's Com. [7th ed.], 355, 356 [star paging 339], and cases cited.)   Their deed must be taken subject to the powers contained in the will. (*Downing* v. *Marshall, supra ; N. Y. Dry Dock Co.* v. *Stillman*, 30 N. Y., 182 ; *Crittenden* v. *Fairchild*, 41 id., 289 ; *Kinner* v. *Rogers*, 42 id., 531 ; *Skinner* v. *Quinn*, 43 id., 99 ; 3 R. S. [5th ed.] 26, § 127.)   Every person dealing with the land is charged with notice of the contents of the will, and the nature and object of the interests of the several devisees therein.   (*Hetzel* v. *Easterly*, *supra*.)   It is a well settled rule of law in this and other States, that a subsequently docketed judgment lien cannot prevail as against an unrecorded deed.   (4 Kent's Com., 181 [star paging, 173] ; *Schmidt* v. *Hoyt*, 1 Edw. Ch., 652.)   The sheriff's deed was limited to such interest only as J. M. Easterly had, or had subsequently acquired at the time judgment was docketed, or since May 11, 1869.   (4 Paige, 15 ; *Tallman* v. *Farley*, 1 Barb., 280 ; 1 Hare, 547 ; 3 R. S. [5th ed.], 30, § 163 ; as to sheriff's deed, see

*Sage* v. *Cartwright*, 5 Seld., 49; 1 R. S., 739, § 143.) The purchaser at sheriff's sale is not protected by the recording act, unless the grantor had some interest which could pass by the prior recorded deed, under which the purchaser claims the protection of the acts. (*Jackson ex dem. Stewart* v. *Town*, 4 Cow. [foot pag.] 598, and opinion by WOODWORTH, J., 603–607; *Bigelow* v. *Fink*, 17 Barb., 394, last half p. 396; *Dickinson* v. *Smith*, 25 id., 102.)

*John T. Pingree*, for the defendant.

GILBERT, J. :

Both parties claim under the will of Mrs. Easterly, whereby the testatrix devised the premises in controversy, in equal parts, to her husband John M. Easterly, and her two daughters, Emma F. and Annie L. Easterly, absolutely, and, whereby she also devised another parcel of land to her said daughters as a home, subject to a life estate therein, which she gave to her husband. The testatrix appointed her husband sole executor of her will, and empowered him, " at and after her decease, to sell and convey " the premises involved in this suit, and ordered and directed him to invest the portion of the proceeds going to her daughters in some good securities, and keep the same invested for them, until after they severally became of the age of twenty-five years, and then to pay the same to them with any accrued accumulation of interest. By a codicil she extended that power of sale to the other parcel, and authorized her said executor to sell either or both of them, in his discretion, and to invest the proceeds in any way which he might deem advantageous to the interests of her children and himself. This power of sale was clearly a general power in trust; and as such was expressly authorized by the statute of powers. (1 R. S., 734, §§ 94–96.) It vested no estate whatever in the executor; nor did it, in any manner or degree, limit or qualify the estate in fee devised to the daughters. In short, it conferred upon the executor a bare authority to sell the shares of the daughters for their exclusive benefit, and required him to invest the proceeds and to pay them to the daughters on their arriving at the age of twenty-five years.

The estate in fee devised to the daughters vested in them, subject to the power, and the same estate passed to the defendant, by virtue

of their conveyance to him, dated February 8th and recorded March 9th 1870, subject also to the execution of the power. (*Blanchard* v. *Blanchard*, 11 N. Y. S. C. [4 Hun], 287.) This conveyance is prior to that made by the executor to the plaintiff, under which the latter claims the shares devised to the daughters, and the title of the defendant to those shares must prevail over that of the plaintiff, unless the title of the defendant has been cut off by the execution of the power. It sufficiently appears, we think, that the defendant purchased with notice of the power. As to him, therefore, the power was a lien on the lands which he purchased from the time the will took effect. (1 R. S., 735, § 107.) It is contended, however, that when the daughters became twenty-one years of age they had the right of election to take the thing given as land or as money, and that the sale of the land was a conclusive election to take it as land. This doctrine of election may be applied where there has been an equitable conversion of land into money, or money into land. Here, however, there was no conversion, because a mere discretionary power of sale does not produce that result. To constitute a conversion of real estate into personal without an actual sale, it must be made the duty of the grantee of the power to sell it in any event. (*White* v. *Howard*, 46 N. Y., 162.) Parting with a thing is not very cogent evidence of an election to keep it; but passing that, here no occasion for an election to take land was afforded, for the devise was directly to the daughters, and already vested in them a legal estate in fee in the lands, *nolens volens;* but such estate was liable to be divested by an execution of the power of sale granted to the executor. The question, then, is whether those devisees could, by conveying their estate, annul the power. There would seem to be no object for the exercise of a bare power to sell lands devised in fee to one person, when the entire proceeds of the sale are directed to be paid over immediately to the devisee. The grantee of the power would be bound to sell for the best price he could get, and no one could compete with the devisee, for the reason that he, being entitled to all the proceeds of the sale, could out-bid all other buyers, and so insure the preservation of his estate in the land. But where, as in this case, the land is devised to several tenants in common, subject to a power of sale, and they are not entitled to the immediate payment of the proceeds of a sale under

the power, but the power is in trust to invest the proceeds, and to pay the same, with the accumulated interest, to the devisees, only after the lapse of a specified period, there is a worthy object for the power. It imposes a duty or trust upon the grantee thereof, which the grantor had a right to create, and which the court is bound to carry into effect. In such a case the devisees take undivided shares in the land, but by virtue of the power in trust each devisee acquires an equitable interest in the fund to be raised by a sale, and either might compel an execution of the power against the wishes of the others, and so obviate the necessity of partitioning the estate. As a means of distribution, therefore, such a power ought to be upheld. It is the duty of courts also to carry out the intention of the testatrix. We think it is quite clear that she intended that her daughters should not receive the proceeds of a sale of the land, until they severally arrived at the age of twenty-five years. That is the time when the grantee of the power is directed to pay such proceeds to them. To hold that they might themselves before that time sell the land and receive the proceeds of the sale, and by those acts supersede the authority conferred by the testatrix on the grantee of the power, and the trust upon which it was granted, would violate her will, and would, for that reason, be contrary to law. Without pursuing the subject further, it will be sufficient to refer to the following cases where the position we have assumed was fully sustained by the Court of Appeals: *Crittenden* v. *Fairchild* (41 N. Y., 289); *Kinnier* v. *Rogers* (42 id., 531); *Skinner* v. *Quin* (43 id., 99). These cases appear to be decisive of the claim of the defendant, respecting the parcel conveyed to him by the daughters. That conveyance operated, after the execution of the power, merely to substitute him in equity in their place, as the beneficiary under the power. The legal estate passed to the plaintiff by the conveyance from the grantee of the power, and the defendant became entitled to the proceeds of the sale thereof, because, upon an obvious principle of equity, such proceeds belonged to him rather than to the daughters.

We have not examined the evidence offered to prove that the executor had been superseded in his office by the order of the surrogate, made in 1869, for, as the law then stood, no order made by the surrogate could affect him in his capacity of grantee

of the power. The statute then explicitly provided another remedy for the removal of a grantee of a power, who had violated or threatened to violate his trust, or who should be insolvent, or whose insolvency should be apprehended, or who for any other cause should be deemed an unsuitable person to execute the trust. It must have been done by the Supreme Court, on petition or bill in equity. (1 R. S., 734, § 102; id., 730, § 70; Laws 1847, 323, § 16.) Since that time, however, the legislature has conferred upon surrogates authority to require testamentary trustees and guardians to give security, and to remove them. (Laws 1871, chap. 482.) Our conclusion, therefore, is that the plaintiff acquired a valid title to the shares devised to the daughters by virtue of the executor's conveyance to him, and that the conveyance by the daughters to the defendant, being subject to the power, had no effect upon the estate devised to them after the power had been executed by the deed to the plaintiff.

The claim of the defendant to be a mortgagee in possession, was, we think, completely refuted. The tender of payment of the mortgage extinguished it. No notice having been given of the assignment of the mortgage by Briggs, a payment of the mortgage debt to him would have been valid, and a tender of such payment to him was as effectual to extinguish the lien of the mortgage as an actual payment. (*Kortright* v. *Cady*, 21 N. Y., 343; *Reed* v. *Marble*, 10 Paige, 413.)

Nor did the court err in refusing to submit to the jury the question whether the conveyance under which the plaintiff claims was fraudulent. That defense is not pleaded. Most of the testimony on that subject consisted of acts of Easterly alone. The most significant were the leasing of the property to the defendant and the institution of a suit for the partition of it after he had conveyed it to the plaintiff. In the absence, however, of proof connecting the plaintiff with those acts, they furnish no evidence against him.

With respect to the remaining one-third of the premises in controversy, we are of opinion that the power, so far as it related to this share, did not affect the rights of the creditors of Easterly, and that the conveyance from the sheriff to the defendant must prevail over the prior unrecorded deed made by Easterly to the plaintiff in execution of the power. The judgment was a lien on the share of

the land devised to him (Code, §§ 283, 462), and the statute regulating the recording of conveyances, etc., expressly declares that an unrecorded conveyance shall be void as against any subsequent purchaser in good faith and for a valuable consideration, whose conveyance shall be first duly recorded. (1 R. S., 756, § 1.)

We must assume that the defendant was such a purchaser, for the plaintiff having, upon the trial, relied wholly upon legal grounds to avoid the effect of the conveyance to the defendant, and omitted to suggest that there was a question of fact involved in that subject; is precluded from taking the objection that the court did not submit the matter to the jury. The conveyance of the sheriff pursuant to the power given him by the statute relative to sales under executions, was, in legal effect, equivalent to a conveyance by Easterly himself. (2 R. S., 373, § 62; 3 Wash. C. C., 550; 2 N. & McC., 105; 13 Rich. Eq., 222–239.)

To say that Easterly having parted with his estate in the land, there was nothing for the sheriff to sell, merely begs the question. He could by his own deed pass a good title to the land to a subsequent *bona fide* purchaser, notwithstanding he had previously conveyed the same land to the plaintiff. A sale of the land on execution against him to a *bona fide* purchaser and a conveyance to the latter pursuant thereto, stand on the same footing. In both cases the subsequent purchaser acquires a valid title because as against him the prior unrecorded deed is void, and being void the estate remained in the grantor. (*Jackson* v. *Chamberlain*, 8 Wend., 620; *Jackson* v. *Post*, 15 id., 588; *Hooker* v. *Pierce*, 2 Hill, 650.) The fact that the conveyance made by Easterly as grantee of the power, which included this share, was recorded before the sheriff's deed to the defendant, does not affect the rights of the latter. The language, "whose conveyance shall be first duly recorded" used in the statute, evidently means the deed by which the title is transferred, and not a deed which is inoperative for that purpose. This conveyance was of the latter character. Easterly's share in contemplation of law, was not embraced in the power. On the contrary the devise of this share vested the legal estate in Easterly absolutely, and it was in no sense subject to the power granted to him. Before the Revised Statutes a power added to the fee would have been void. (*Goodill* v. *Brigham*, 1 B. & P.,

193.; *Maundrell* v. *Maundrell*, 7 Ves., 583.) So now in this case, as to the share of Easterly, the power merged in the fee. For the statute of powers provides that "in all cases where an absolute power of disposition is given and no remainder is limited on the estate of the grantee of the power, such grantee shall be entitled to an absolute fee," and it declares that every power of disposition shall be deemed absolute by means of which the grantee is enabled in his lifetime to dispose of the entire fee for his own benefit. (1 R. S., 733, §§ 83–85.) Here an absolute fee was devised to Easterly, and then a power to sell the estate so devised was granted to him, with a direction, necessarily implied, to receive the proceeds of the sale and retain them for his own benefit. Such a power is not authorized by the statute of powers, and it was simply nugatory so far as it affected the undivided share of Easterly, and the recording of a conveyance, made by him in execution of the power, which did not operate to transfer a present estate, nor to confirm the previous grant made by him individually, was also nugatory.

There are other exceptions which were not urged on the argument, and which we do not deem it necessary to discuss. We have examined all of them and have found no error.

A new trial must be denied and judgment for the plaintiff must be entered in accordance with the verdict.

Present — MULLIN, P. J., SMITH and GILBERT, JJ.

Ordered accordingly.