Ames, Respondent, vs. Storer, imp., Appellant.

*January 12 — February 8, 1898.*

(1) *Appeal: Findings.*  (2) *Mortgages: Foreclosure sale: Interest of mortgagee under tax certificates.*

1. Findings of the trial court will not be disturbed on appeal unless they are against the clear preponderance of the evidence.
2. Under sec. 3169, R. S. 1878 (providing that the sheriff or referee making a foreclosure sale "shall make, execute and deliver to the purchaser a deed of the premises sold . . . which deed, upon the confirmation of such sale, . . . shall be a bar to all claim, right or equity of redemption therein, of and against the parties to such action, their heirs," etc., and also against all persons claiming under them subsequent to the filing of the notice of *lis pendens*), a referee's deed to the purchaser, upon the confirmation of the sale, passed to him all the right, title, or interest of the mortgagee in and to the premises sold, including his interest in the premises arising under tax certificates held by him at the time of the sale.

APPEAL from a judgment of the superior court of Douglas county: CHARLES SMITH, Judge. *Affirmed.*

The plaintiff brought this action, claiming to be the owner in fee simple and in actual possession of lots 19 and 20 in block 10 in West Superior, First division, Douglas county, Wisconsin (setting forth his title thereto), to quiet his title to said premises, as against the defendant *George L. Storer* and twelve others, in respect to certain tax certificates and tax claims asserted against said lots. The defendant *Storer*, only, answered the complaint, and he, only, appeals from the judgment rendered in the action.

The premises were mortgaged to the defendant *Storer* by one Baribeau, the owner thereof, May 20, 1890; and the mortgage was foreclosed by action in the superior court of Douglas county, judgment of foreclosure having been rendered March 19, 1894, and the premises were sold under the same at referee's sale in May, 1895, to James B. Finch, who conveyed the same to the plaintiff in August, 1895. The premises had been sold at a tax sale in 1893 for taxes for $327.14, to one Humphrey, who about June 1, 1893, assigned the certificates of sale to the defendant *Storer*. The same premises, after judgment and before the foreclosure sale, were again sold for taxes for $391.81, to the defendant *Storer*, who paid in all for the four tax certificates thereon $718.95. The mortgagor had covenanted in the mortgage to pay all taxes. It appeared that the defendant *Storer* was never in possession of the mortgaged premises, either actually or constructively, and that his purchase of said tax certificates was for the express purpose and with the intention, only, of protecting his mortgage lien, and that he held them only to reimburse himself for the money he had paid for such certificates; that he was not seeking any tax deed on the premises; that he had paid the actual face value of said certificates, with all interest, costs, and charges thereon; and that at the time of the referee's sale under the said judgment he was the holder and owner of said certificates.

James B. Finch became the ostensible purchaser of the mortgaged premises at the referee's sale under the judgment, for the sum of $5,551.46; and the referee on the same day executed and delivered to him a deed of said premises, in the usual form of a referee's deed of sale on foreclosure. On the 31st of August, 1895, Finch conveyed the premises by quitclaim deed to the plaintiff. The premises were bid in for said Finch by E. F. McCausland, of the firm of McCausland & Smith, acting as the attorneys and agents of said purchaser, and who were duly authorized so to do. The

sum total of said judgment and taxes at the date of the sale was $6,299.44, and the market value of the premises was $9,000. The purchaser had actual knowledge of the taxes outstanding against said premises at the time of the sale, and of the existence of said four tax certificates. The plaintiff, *Samuel Ames*, was the actual and real purchaser of said premises at the referee's sale, and they were bid off in the name of said Finch only as a matter of convenience. Up to the time of the confirmation of said referee's sale and deed of said premises, they were in the possession of the mortgagor, Baribeau, and the rents and profits were all paid either to him or to his use and benefit.

It was found that at the time of the commencement of the action the plaintiff was the owner in fee simple of the premises, and in the actual possession and occupancy of said lots, and that none of the defendants had any estate or interest in said premises, or any part thereof, of any kind or nature; that said tax certificates were purchased and acquired by the defendant *Storer* while he was the owner and holder of said mortgage and the judgment of foreclosure thereof, and that by the purchase and acquisition of said tax certificates he redeemed said mortgaged premises from said sales, and that such certificates became void; that, by the sale of said real estate to the said Finch pursuant to the foreclosure of said mortgage, the defendant *Storer* thereby transferred to said Finch all his interest in said real estate upon which said mortgage was a lien, free and clear from any and all liens and incumbrances in favor of him, the said *Storer*.

The court gave judgment in favor of the plaintiff and against the defendant, establishing the plaintiff's claim, right, title, estate, and possession in and to the premises, and that the said Finch, through whom the plaintiff claims title by his purchase of said real estate at the mortgage sale, acquired all the right, title, and interest of the said *Storer*, including

Ames vs. Storer.

his interest in all of said tax certificates, in and to the property in dispute; and gave judgment against the defendant *Storer* for costs, from which he appealed.

The defendant *Storer* by his answer insisted that it was agreed between him and the said purchaser, Finch, by and through his attorneys and agents, that he (Finch) was to bid off said premises at the sum of $5,551.46, which was the amount of said *Storer's* foreclosure judgment independent of said tax certificates; that, in case no higher sum should be bid by others, he (said Finch) was to bid in said premises at said amount, and reimburse the defendant *Storer* the amount paid by him for said four tax certificates, with accrued interest, costs, and charges, and that, unless said Finch was willing to carry out such agreement in all respects, the defendant *Storer* would bid in said property himself; that said Finch, his agents, etc., agreed, in consideration of said premises being so sold to him, and in the absence of any higher bid, that said taxes should be taken care of as above stated; that the defendant *Storer* relied on such agreement, and for that reason refrained from bidding off said premises, believing that said purchaser, Finch, would reimburse him for the moneys so paid out by him for the said tax certificates. The defendant *Storer* claimed to own and hold said tax certificates, and to be entitled to enforce the same against the said premises, as liens thereon, and the right, title, and interest acquired at such foreclosure sale and so subsequently conveyed to the plaintiff.

In support of the contention of the defendant *Storer*, Mr. Perkins, his attorney, testified in substance that he stated to Mr. McCausland, acting for the plaintiff in making the purchase, that it would take the amount of the judgment, $5,551.46, plus what defendant *Storer* had paid out for taxes, which was about $747, the amount of the four certificates in question, to purchase the premises; that all the defendant *Storer* wanted out of the premises was his money, the

amount of the judgment and costs, and the taxes that he had paid out; that he did not want any tax deed, and said to him, "If you bid in this property for your client at the amount of our judgment, and costs and taxes, as stated, and there is no higher bidder, you can have the property, if you will reimburse us for those taxes;" that McCausland, on behalf of his client, promised to do that, and that he (Perkins), as attorney for *Storer*, relied on that agreement, and the sale was carried through, and the property sold to Finch on the strength thereof; that all this was said before the mortgage sale, and that he relied on these conversations in allowing the property to be bid in by Finch, and believed that the amount of the certificates would be paid to *Mr. Storer;* that McCausland had called for a statement of the amount of the taxes, and he (Perkins) had furnished the statement, or stated to him the amount.

On behalf of the plaintiff, and in rebuttal of the evidence produced on the part of the defendant, both McCausland and Peckham, who participated on behalf of the purchaser, Finch, in making such purchase, testified in substance that there never was any such conversation, or any understanding that the purchaser at the foreclosure sale would take care of or assume the payment of the taxes. McCausland testified positively that Perkins never said anything to him about the taxes on the property; that he did not say anything to him about his client, Finch, having to take care of those taxes; that nothing was said about taxes to him, that he ever heard of. The witness Peckham testified that Mr. Perkins said nothing to him about *Mr. Storer* having the tax certificates on the property, and did not know at that time that *Mr. Storer* had them; that Mr. Perkins never said anything to him about the outstanding taxes as a part of the purchase price of the property. Considerable testimony was given pro and con in relation to this contention. Mr. Perkins testified that Peckham gave him a draft when the

matter was settled; that he did not ask him for the amount of the tax certificates, and did not know whether anything was said about it at that time; that he relied on McCausland's word to carry out the agreement in regard to the taxes, and supposed it would be carried out; that he gave him the amount it would take to clear up the judgment and taxes at $6,311.

The court refused to find according to the contention of the defendant *Storer* in relation to the taxes and tax certificates, but found in that respect in favor of the plaintiff. The defendant *Storer* excepted to the finding, and appealed from the judgment so given in favor of the plaintiff.

For the appellant there were briefs by *Phil. H. Perkins,* attorney, and *Burr W. Jones,* of counsel, and oral argument by *Mr. Jones.* They contended, *inter alia,* that a mortgagee who is not in possession is under no obligation to pay the taxes, nor does he hold a fiduciary character toward the mortgagor, and hence he is not disqualified from acquiring a tax title. The cases which hold otherwise under such circumstances are either in states where the common-law rule prevails as to the character of mortgages or are cases where the mortgagee was in actual possession of the premises. Black, Tax Titles, § 278; *Waterson v. Devoe,* 18 Kan. 223; *Spratt v. Price,* 18 Fla. 289; *Summers v. Kanawha,* 26 W. Va. 159; *Reimer v. Newel,* 47 Minn. 237. The turning point in all the adjudged cases is the obligation of the party setting up the tax title to pay the taxes. *Smith v. Lewis,* 20 Wis. 356; Cooley, Taxation, 501; *Wood v. Armour,* 88 Wis. 488; Black, Tax Titles, § 273. The mortgagee, being out of possession and not bound by any covenant, agreement, or promise to pay taxes, is under no obligation to pay the taxes on the mortgaged premises, and may acquire title to the property by a fair purchase at a tax sale and hold it like any other purchaser. Pingree, Mortgages, §§ 909, 2123; *Williams v. Townsend,* 31 N. Y. 411; *Kirkwood v. Thompson,* 2 De Gex,

Ames vs. Storer.

J. & S. 613; *Darcy v. Hall*, 1 Vern. 48; *Knight v. Marjoribanks*, 2 Macn. & G. 10; *Gjerness v. Mathews*, 27 Minn. 320; *Chambers v. Waters*, 3 Sim. 42; *Ten Eyck v. Craig*, 62 N. Y. 406; *Cameron v. Irwin*, 5 Hill, 280; *Shaw v. Bunny*, 13 Weekly Rep. 374, 2 De Gex, J. & S. 468; *Cholmondely v. Lord Clinton*, 2 Jac. & W. 183; *Cornell v. Woodruff*, 77 N. Y. 203; *Young v. Omohundro*, 69 Md. 424; *Beckwith v. Seborn*, 31 W. Va. 1; *Brevoort v. Randolph*, 7 How. Pr. 398; *Jackson v. Relf*, 26 Fla. 465; *Waterson v. Devoe*, 18 Kan. 223; *Bettison v. Budd*, 17 Ark. 546; *Ferguson v. Etter*, 21 id. 160; secs. 1158–1160, R. S. 1878.

For the respondent there was a brief by *McCausland & Smith*, and oral argument by *E. F. McCausland*. To the point that a mortgagee cannot take a tax title, they cited Black, Tax Titles (2d ed.), § 278; *Burchard v. Roberts*, 70 Wis. 111; *Fisk v. Brunette*, 30 id. 102; Blackwell, Tax Titles (5th ed.), §§ 566, 593; *Bassett v. Welch*, 22 Wis. 175; Cooley, Taxation, 503–505; sec. 1158, S. & B. Ann. Stats., note.

PINNEY, J. 1. Whether, as contended by the defendant *Storer*, it was agreed at the time of the foreclosure sale, and in consideration thereof, that the purchaser, Finch, assumed the payment of the four tax certificates, with interest, costs, and charges, which *Storer* held against the premises, and to reimburse him therefor, was a controverted question of fact, upon which the evidence is so conflicting that it is impossible to say that the finding of the court adverse to the contention of the defendant is against the clear preponderance of the evidence. We cannot, therefore, interfere to reverse this finding, and a discussion of the evidence upon which it is founded would lead to no profitable result. The parties neglected a salutary precaution in such cases, by failing to fully complete the business in hand, or to commit their agreement to writing; and after the foreclosure sale had been completed by the execution and delivery of the necessary

deed and the payment of $5,551.46, the amount of the bid, the present controversy about the amount of the tax certificates occurred, which gave rise to the present action.

2. The general rule is stated to be: "A purchaser at a mortgage foreclosure sale acquires all the title and interest of both the mortgagor and mortgagee in and to the property. The court undertakes to dispose of the interests of the parties to the suit in the land, and the purchaser acquires those interests, whatever they may be. And it has been said that a sheriff's sale of real estate under a judgment recovered by *scire facias* upon the mortgage passes to the purchaser the title to the mortgaged premises, discharged of all equities,— even of those of which the mortgagee had no notice or knowledge." Wiltsie, Mortgage Foreclosure, § 577. In *Tallman v. Ely*, 6 Wis. 244, the court, speaking on the subject, said: "Whatever estate or title the mortgagee had in the mortgaged premises became merged in the decree, and passed to the purchaser at the judicial sale. Whatever estate or title the other parties to the suit had at its commencement passed by the same act to the same party. Such, it would seem, must be the necessary and inevitable consequence and result of the decree of foreclosure and sale, if any effect whatever is given to them."

Whatever doubt may have existed upon this subject has been put at rest by the statute (R. S. 1878, sec. 3169), which provides that, upon any foreclosure sale being made, "the sheriff or referee making the same, on compliance with its terms, shall make, execute and deliver to the purchaser a deed of the premises sold, setting forth each parcel of land sold to him, and the sum paid therefor, which deed, upon the confirmation of such sale, shall vest in the purchaser all the right, title and interest of the mortgagor, his heirs, personal representatives, and assigns, in and to the premises sold, and shall be a bar to all claim, right, or equity of redemption therein, of and against the parties to such action,

their heirs, and personal representatives, and also against all persons claiming under them subsequent to the filing of the notice of the pendency of the action in which such judgment was rendered." The referee's deed to Finch, the purchaser at the foreclosure sale, upon the confirmation of such sale, passed to him whatever right, title, or interest the defendant *Storer* had in and to the premises sold, whether under the tax certificates in question, or either of them, or otherwise.

For this reason, and in view as well of the finding of the circuit court already noticed, the defense of *Storer* utterly fails; and it is not material to consider or determine whether the purchase by *Storer* of the tax certificates in question operated as a redemption of the lots from such tax sales, or as a payment of the taxes thereon. In any view, therefore, that may be taken of the case, the judgment of the superior court is correct.

*By the Court.*— The judgment of the superior court is affirmed.